W. R. HARRIS et al., Appellants,

v.

Kermit COCHRAN et al., Appellees.

No. 6842.

Court of Civil Appeals of Texas.
Texarkana.

March 1, 1956.

Rehearing Denied March 29, 1956.

Bath & Turner, Lloyd & Strong, Ben M. Payne, Jr., Robert M. Allen, Henderson, for appellants.

Gordon R. Wellborn, Rex Houston, Henderson, for appellees.

HALL, Chief Justice.

This is an action for damages for personal injury suffered by Barbara Cochran, a minor, as a result of being struck by an automobile driven by Jerry Grandstaff, a minor, a newspaper carrier for the News Publishing Company of Henderson, Texas.

The suit was brought by Kermit Cochran, father, acting as Next Friend for Appellee Barbara Cochran. In addition to being against the News Publishing Company and its partners, it was also against the minor news carrier and his father, F. E. Grandstaff.

Trial was to a jury which resulted in verdict favorable to appellees upon which judgment was rendered against the partners of the News Publishing Company and Jerry Grandstaff in the sum of $20,000. There was a take-nothing judgment in favor of F. E. Grandstaff, father of the minor paper carrier. There was also a take-nothing judgment against F. E. Grandstaff in favor of the partners comprising the News Publishing Company.

Appellants bring forward 41 points, the first four of which are briefed together and are:

1. "Judgment of the court should be rendered in favor of News Publishing Company, for there was no evidence that Jerry Grandstaff, driving his father's car when it collided with Barbara Cochran, was an employee of News Publishing Company.

2. "The trial court erred in overruling the motion of these defendants to set aside the jury's findings to Special Issue No. 2, because the evidence was insufficient to support the jury's affirmative answer thereto.

3. "The court erred in refusing to set aside the jury's findings in answer to Special Issue No. 29, because the evidence was insufficient to show that Jerry Grandstaff was not an independent contractor.

4. "Judgment of the court should be rendered in favor of News Publishing Company, because there was no evidence to show that Jerry Grandstaff, a newspaper carrier boy, driving his father's car when it collided with Barbara Cochran, was not an independent contractor."

The record reveals that on or about November 16, 1953, Jerry Grandstaff was driving his father's automobile delivering newspapers for the appellant News Publishing Company on the streets of Henderson, Texas. Another boy was with him, Frank Dunklin, whom Jerry was teaching the route. Jerry was carrying from 150 to 175 papers at the time. While operating the car on said date, Jerry drove into and against Barbara Cochran, severely injuring her. There seems to be no contention or dispute about the seriousness of her injuries. She remained a long time in the hospital and suffered permanent injury to the brain. There was evidence that in later years she may develop epilepsy. Neither is there serious dispute as to the negligence of Jerry in driving the car when it struck Barbara.

The serious issue here, and the one that will ultimately decide this case, is whether or not on the date Jerry struck Barbara with the car he was an employee of the News Publishing Company, or was an independent contractor in delivering his papers.

On the date of the accident, Jerry was 15 years of age, and had been throwing newspapers for the Publishing Company for about 18 months. On the occasion of the injury to the little girl, Mr. Velvin, the circulation and advertising manager for the News Publishing Company, told Jerry to teach the new boy his old route No. 4 so he would not get mixed up. Jerry was following Velvin's instructions in this respect when the accident occurred. To do this, Jerry borrowed his father's automobile and the two boys carried the papers, 175 or 200 copies, and the new boy was throwing papers. Jerry's job required him to be at the newspaper office as the papers came off the press, after school, to get his allotment. Jerry and the other newsboys were required to throw papers to all the patrons on their routes. Jerry testified that if he missed a patron on the route and the patron called the newspaper office, Mr. Velvin, his superior, would have him, if he had not gone home, to deliver the paper to the patron, and for

such dereliction of duty he would not get a free pass to the picture show on the following Saturday as was the custom for perfect delivery. A hook was placed in the newspaper office containing cards of the subscribers on Jerry's route. If a new subscriber was found by Jerry, or if one was phoned into the office, a card was made for the new subscriber and hung on the hook. Jerry collected from his patrons the money owing by them to the newspaper. He was required to do this unless the money was paid direct to the newspaper by the patrons. All money collected by Jerry was turned in to Mr. Velvin, and all checks received by Jerry were made payable to the newspaper. Jerry carried a receipt book issued to him by Mr. Velvin from which he issued receipts for money received from the patrons. He was also furnished a bag in which to carry the papers and was furnished waxed paper to wrap them in rainy weather. He would go on personal errands for Mr. Velvin, such as carrying newspapers to the Harrises, the owners of the newspaper, on Saturday afternoons. He was paid for this service by the Harrises. Jerry testified, further, that he worked two hours per day for the newspaper in throwing papers at a wage of 75¢ per hour and made a weekly wage of about $9.15. Jerry also testified that he got 5¢ per paper thrown, which amounted to about $9.25 per week. If Jerry got his collections in quickly the newspaper would pay him a $2 bonus per month.

There is evidence also in the record that Jerry's car was parked where Mr. Velvin could have seen it if he had looked, but it is also in the record that Mr. Velvin advised Jerry that he would rather he did not use the car. Jerry furnished his own motor scooter and his father's car and paid all the expenses incident to their operation. Jerry did not buy the papers from the Company before he delivered them, but delivered them for the News Publishing Company. The money collected by Jerry for subscriptions, as heretofore pointed out, was turned over to the Company as their money, and if a customer did not pay his bill, Jerry was not charged with the loss,

the Company bore the loss. Jerry also testified that Mr. Velvin, the circulation manager, typed the following instrument which he and his father signed before a Notary Public:

"The State of Texas ⎱ Date: December 18,
County of Rusk ⎰ 1953.

"This is to certify that my name is Jerome Timothy Grandstaff, age 16, white American, single, and residing with my parents, Mr. & Mrs. F. E. Grandstaff at 112 Kilgore Rd., Henderson. I am employed by the News Publishing Company as a delivery boy at the wages of 75¢ per hour for two hours per day, 6 days per week, making an average weekly salary of $9.15. On November 16, 1953, I was on my route delivering papers in my father_ automobile and accidently collided into a small girl who was walking off the side of the road. I suffered extreme shock as a result of this accident and was taken to the Henderson Memorial Hospital and treated by Dr. J. E. Ross of Henderson. I was dismissed from Dr. Ross' care on November 30, 1953, and I am completely cured as a result of my treatment. I have not returned to my job as I am a student at the Henderson High School where I am now attending school.

"I have agreed to settle my claim with United States Fidelity & Guaranty Insurance Company for One Hundred and No/100 ... Dollars ($100.00), in addition to all money, if any, heretofore paid for compensation. I have had a full opportunity to learn the facts of my claim, and in making this settlement I rely on my own knowledge of the facts and not upon any statement or opinion of any physician or person representing the Insurance Company or my employer. I understand that the nature and extent of my injuries and the liability of the Insurance Company are indefinite, uncertain and incapable of being satisfactorily established.

"I understand that this is a full and final settlement. This Compromise settlement Agreement is fully approved by the under-

signed as Father and natural guardian for minor herein and the natural guardian does herewith enter into Compromise Settlement Agreement with his minor son and the Insurance Company with the request that the Industrial Accident Board approve this Compromise agreement when presented to them for their approval.

"F. E. Grandstaff

Witness: C. E. Matthews

"Jerome Timothy Grandstaff

"Sworn to & Subscribed before me, this the 18th day of December A.D. 1953

Seal

"J. M. Almand Notary Public,
Rusk County, Texas

J. M. Almand

Notary Public, in and for
Rusk County, Texas.

"Industrial Accident Board    *    State of Texas
Received Dec 30 1953"

This instrument shows to be a compromise settlement between Jerry and his father on the one hand, and the U. S. Fidelity & Guaranty Insurance Company on the other for the sum of $100 "in addition to all money, if any, heretofore paid for compensation" for the shock Jerry sustained at the time he struck the little girl. The evidence shows without dispute that U. S. Fidelity & Guaranty Insurance Company was the compensation carrier for the appellant in this case. Jerry admitted signing this paper. In the compromise he also made this statement: "I am employed by the News Publishing Company as a delivery boy at the wages of 75¢ per hour for two hours per day, 6 days per week, making an average weekly salary of $9.15. On November 16, 1953, I was on my route delivering papers in my father's automobile and accidentally collided into a small girl who was walking off the side of the road." Jerry testified further that he was not sure whether Mr. Velvin prepared the instrument set out or not. He also testified on another occasion that Mr. Velvin did prepare the statement. There is also testimony that Jerry received pay for one to two weeks from the Newspaper after he received the shock in the wreck.

Jerry testified further in his effort to secure compensation insurance during the time of his injury as follows:

"Q. Did you go with him (insurance adjuster) to Mr. Velvin's office to discuss the matter? A. No, sir.

"Q. You never did do that? A. Not to my knowledge, I don't remember it if I did.

"Q. You would not say that you didn't go though, would you, Jerry? A. You mean with the adjuster?

"Q. Well, just to Mr. Velvin's office to discuss it? A. Oh, I went up there to discuss it with Mr. Velvin.

"Q. You discussed whether you could get this money or not for getting hurt, didn't you? A. Yes, sir.

"Q. And after you discussed it with Mr. Velvin you did get it, didn't you? A. Yes, sir."

It is in evidence that the compensation policy carried by appellants covered salesmen working on the outside circulating the newspaper and advertising.

■ To be sure there are inconsistent statements in Jerry's testimony, but as said in Tunnell v. Van School Dist. No. 53, Tex.Civ.App., 129 S.W.2d 825, 829:

"The fact that other testimony of Wells may be inconsistent with the above statements does not take from

the whole of his testimony its probative force as regards the construction the jury decided to place upon it. It is for that fact-finding body to reconcile such inconsistencies. Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68, 76; Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365."

From the above summary of the facts and circumstances we have concluded that a question of fact is raised with respect to whether Jerry was an employee of the newspaper or was an independent contractor. The jury having answered that he was an employee, it is our opinion that the facts and circumstances above detailed are ample to support such finding. We are supported in the above conclusion by the holding of our Supreme Court in Elder v. Aetna Casualty & Surety Co., 149 Tex. 620, 236 S.W.2d 611. In some particulars the facts and circumstances in this case may not be as strong as those in the Elder case, but there are other facts such as the claim by Jerry for compensation insurance, which claim the circumstances strongly indicate was prepared by Velvin, circulation manager of appellant, that clearly indicate that Jerry was an employee of appellant at the time the little girl was injured. Tested by the circumstances and facts detailed above, we think the Elder case is controlling. An employee or servant is defined as follows: "'A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled *or is subject to the right to control by the master.'*" An independent contractor is defined as: "'A person who contracts with another to do something for him but who is not controlled by the other *nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'*" These definitions are taken from the case of Carter Publications, Inc., v. Davis, Tex.Civ.App., 68 S.W.2d 640, 642, and are quoted from Restatement of the Law of Agency, Chap. 1, par. 2. See also Gulf Refining Co. v. Rogers, Tex.Civ. App., 57 S.W.2d 183; American Nat. Ins.

Co. v. Denke, Tex.Civ.App., 65 S.W.2d 522. (Italics ours.)

Applying the above definition of an employee to the facts and circumstances in this case, we are convinced that they are sufficient to show such control by the newspaper over Jerry's acts and conduct together with his seeking and obtaining compensation under appellants' insurance policy as would support the jury findings that Jerry was an employee of appellant. We think the word "employee" in its general significance is governed by the same rules whether a "claim lies within the field of common-law liability or arises out of the Workmen's Compensation Statutes." Elder v. Aetna Casualty & Surety Co., supra, [149 Tex. 620, 236 S.W.2d 613]. See also Standard Accident Ins. Co. v. Pennsylvania Car Co., 5 Cir., 49 F.2d 73, and cases there cited; 45 T.J. pp. 415, 416.

We are aware of the holdings in the cases cited by appellants bearing upon this situation. We have read them carefully, considered and have concluded that they do not fit the situation here since the facts and circumstances are different. A case of this character must be determined by its own facts and circumstances. We think that the case of Elder v. Aetna Casualty & Surety Co., supra, is in point with the situation here. Appellants state in their brief: "However, Jerry Grandstaff claimed to have been injured at the time Barbara Cochran was injured and some thirty days thereafter made a claim for compensation insurance against the U. S. Fidelity & Guaranty Company, the insuror of News Publishing Company. U. S. Fidelity & Guaranty Company settled this claim with Jerry Grandstaff. News Publishing Company had no part in the settlement." Appellants insist that the act of Jerry in making claim for compensation insurance would not bind the News Publishing Company since it "had no part in the settlement." We think the facts and circumstances clearly indicate that Velvin did have a part in the compensation settlement. It is not clear from Jerry's statement whether Velvin wrote out the settlement

agreement copied above; one time he says he did, and another time he says he did not know. But Jerry's testimony is clear that he discussed the matter of compensation and advised with Mr. Velvin. These points are overruled.

Appellants' points 5, 6 and 7 assert that the trial court erred in refusing their motion for instructed verdict and their motion for judgment non obstante veredicto. What we have said in disposing of the preceding points will also dispose of these points, and they are respectfully overruled.

■ By point 8, appellants assert that the trial court erred in failing to instruct the jury on the issue of express or implied authority of the News Publishing Company for Jerry to use his father's car on the occasion of the injury to the little girl. No such charge was given by the court. The facts are, as heretofore pointed out, that Jerry used his father's car on some eight different occasions while delivering papers for appellants. He testified that his car was parked where Mr. Velvin could have seen it, and that no protest was made. Jerry testified that he usually carried his papers on a motor scooter. Mr. Velvin testified that he advised the carrier boys to use motor scooters instead of automobiles. Jerry testified further that there was nothing to keep Mr. Velvin from seeing the automobile on the occasions when he used it. Mr. Velvin's purpose in advising boys not to use automobiles was that "a boy can't make any money running a newspaper route using an automobile and he wouldn't stay very long. Q. I see, you wanted him to make some money so he would stay there. A. So he would stay with his route." Clearly, from this testimony Mr. Velvin had no objection to the boys' using automobiles on the route except for the reason stated above. No issue of fact could possibly arise from the boys' using an automobile instead of a motor scooter as shown by Velvin's statement above. Moreover, it must be remembered that on the occasion of the accident Jerry had been instructed by Mr. Velvin to teach the new

boy his route, so it is apparent that Jerry used a proper conveyance to carry the new boy and his papers in an automobile rather than try to carry them on a scooter. It was appellants' contention throughout the case that Jerry was an independent contractor and as such they had no control over his mode of delivering papers, just so long as he delivered them. The evidence of appellees, as we have pointed out, raised the issue sufficient to sustain the jury's verdict that Jerry was an employee of appellant. The issue of whether Jerry was an employee or an independent contractor in no wise depended upon the mode of transportation he used in delivering the papers. Furthermore, Jerry testified that the automobile was in plain view where Mr. Velvin could have seen it upon the occasions he used it and that he made no objection to the use of the car. The mode or means of travel by Jerry had no direct relation to whether he was an employee of the newspaper or an independent contractor. This point is overruled.

■ Appellants bring forward several bills of exception complaining of argument of appellees' counsel, Gordon Wellborn, made during his closing argument in this case. The bills of exception upon which these points are based each have the following qualification by the trial court: "No objection was made to this argument by any party prior to the amended motion for new trial; and the court finds that this argument was not prejudicial to any defendant." No exception was taken by the appellants to the court's qualification, so we must consider the bills of exception in the light of the court's qualification.

■ From the above qualification it is clear that no objection was made to the argument at the time it was made and no opportunity was given the trial court to instruct the jury not to consider same if the court found said argument unwarranted and prejudicial. We have examined these points and have concluded that an instruction by the trial court to the jury not to consider same would have cured the error

if any. In Roosth & Genecov Production Co. v. White, Tex.Civ.App., 281 S.W.2d 333, 341, error refused, NRE, it is said:

"We have carefully considered all of appellant's points in the light of the whole record in this case, and considering that the evidence strongly supports the jury's findings on negligence and that the verdict of the jury on damages was certainly not excessive in view of the unusually severe and serious permanent injuries sustained by plaintiff, taking into consideration his age, earning capacity and life expectancy, it is our best judgment that the matters complained of by appellant were not in law reasonably calculated to cause and probably did not cause the rendition of an improper judgment in this cause. Rules 434 and 503, T.R.C.P.; Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Benefit Ass'n of Railway Employees v. Dahn, Tex.Civ.App., 272 S.W.2d 762, error ref., n.r.e."

These points are overruled.

■ Jerry Grandstaff, through his father, also appealed from the judgment of the trial court against him through attorneys of his own choice, and insists that the trial court erred in overruling a motion for continuance filed by Jerry's father after the trial court had already appointed Robert M. Allen, a practicing attorney of the Henderson Bar to represent the minor, Jerry Grandstaff. The facts show that about ten o'clock on the day this trial commenced in the court below or the afternoon of that day before the trial actually commenced, F. E. Grandstaff, father of Jerry, had a motion for continuance prepared by some one, other than the guardian ad litem, and presented the same to the trial court, insisting that the guardian ad litem had not had time to prepare the case for trial. The motion to continue was overruled, and the case proceeded to trial at 1:30 p. m. the same day. It also appears from the record that the guardian ad litem is an attorney of over 20 years' experience; that he has had much experience in the trial of damage-suit cases, and also eight years' experience as County Attorney of his county. He testified on a motion for rehearing filed by Lloyd & Strong that he saw no necessity for a motion for continuance; that his co-defendants were represented by able attorneys; that the case had been set for trial several weeks before. It also appears that Allen produced the only witness in behalf of the minor who was present and saw the accident; that Allen on motion had stricken from the record a certain statement signed by the minor when he did not have the benefit of counsel; that he participated in the argument before the jury, and that he had a first cousin who sat as a member of the jury.

The record in this case is voluminous. It seems to us that every avenue was followed and fully developed both as respects the newspaper appellant as well as Jerry, the minor. The trial court heard evidence on Jerry's amended motion for rehearing filed by Lloyd & Strong with respect to the diligence of the guardian ad litem in defense of his ward and concluded that it presented no error. We agree in his holding. Certainly the record on the main case in the trial below shows that Jerry's interests were fully protected.

We have carefully examined all other points brought forward by all appellants and have concluded that they present no error, and they are respectfully overruled.

The judgment of the trial court is affirmed.