680 P.2d 174

**RINGLING BROS. & BARNUM & BAILEY COMBINED SHOWS, INC., Petitioner,**

**v.**

**The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA; The Honorable Harry Gin, a judge thereof, and Fidel Farias, on behalf of himself and his son Julio Farias, and as Personal Representative of the Estate of his minor son, (Alfredo) Julio Farias; Rosalba Farias, individually and as wife of Fidel Farias and mother of Julio Farias; Carmeline Farias, Gregorio Farias, Farrah Marie Farias, individually and as brother and sisters of Julio Farias, real parties in interest, Respondents.**

No. 2 CA–CIV 4850.

Court of Appeals of Arizona, Division 2.

Dec. 1, 1983.

Rehearing Denied Jan. 11, 1984.

Review Denied April 19, 1984.

Jennings, Strouss & Salmon, by Steven
C. Lester and Jefferson L. Lankford, Phoe-
nix, for petitioner.

John F. Day, Phoenix, for respondents real parties in interest.

## OPINION

HATHAWAY, Judge.

This special action was taken from the respondent court's denial of the petitioner's motion to dismiss for lack of subject matter jurisdiction and motion for reconsideration. In light of our conclusion that the trial court abused its discretion in denying the petitioner's motion and that the petitioner's ultimate right to appeal is not an equally plain, speedy and adequate remedy, we accept jurisdiction and vacate the trial court's order.

The action in superior court was commenced by the real parties in interest Fidel Farias, on his own behalf and as personal representative of the estate of his son, Julio Farias, and other members of the Farias family (Farias) against petitioner Ringling Brothers & Barnum & Bailey Combined Shows, Inc., (Ringling Brothers) and other defendants, seeking damages arising out of the death of Julio Farias. Fidel Farias, Julio Farias and three others were engaged to perform a trapeze act in the Ringling Brothers circus known as "The Flying Farias." During a rehearsal of the act at the Tucson Community Center prior to the evening performance on June 25, 1980, Julio sustained severe injuries in a fall which ultimately resulted in his death. The Farias' first amended complaint sets forth several theories of liability, including negligence and product liability, and additionally seeks damages on behalf of the family members who witnessed the accident on the ground of negligent infliction of emotional distress.

Ringling Brothers' motion to dismiss alleged that Julio Farias was an employee of Ringling Brothers at the time of his death, that his death resulted from acts which occurred in the course of his employment, and that the exclusive remedy of the Fariases was under the workmen's compensation laws. The motion was accompanied by numerous exhibits, including the Farias' contract with Ringling Brothers, which will be discussed more fully below. The Farias' response to this motion, which was also accompanied by exhibits in support of their contentions, treated the motion as being in essence a motion for summary judgment which could be successfully resisted on the grounds that "there [exist] material issues of fact and law for the trier of fact to decide." It appears that the trial court also viewed the motion as one which, because of the existence of a factual dispute, should not be finally resolved until after a trial on the merits. In its minute entry order denying the motion, the trial court stated:

"While it very well may be that the deceased was an employee of Defendant Ringling Brothers, there are some doubts which remain in this Court's mind, and it would seem that the trial Judge who hears all of the evidence would be in a better position to decide the issue."

It is apparent that the effect of the trial court's order was merely to postpone a determination of the issue pending a trial on the merits of the action, and in this the trial court failed to perform a duty in which it had no discretion.

In *Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647 (1967), the Arizona Supreme Court held that where the issue of workmen's compensation coverage has been raised in a negligence action against an employer, the trial court must determine whether or not it has jurisdiction of the action before proceeding to trial. Reaffirming its earlier decision in *State ex rel. Industrial Commission v. Pressley*, 74 Ariz. 412, 250 P.2d 992 (1952), the court stated:

"If petitioner was covered by workmen's compensation, then his compensation would be determined by The Industrial Commission of Arizona, and the superior court would not have jurisdiction to try the issues presented; therefore, under the procedure that has been followed in this state for some fourteen years, the court must first determine whether it has jurisdiction before trying a case." 102 Ariz. at 152, 426 P.2d 647.

The rationale for this rule, serving as it does the interests of both judicial economy and the prevention of delay and expense to the parties, is self-evident.

The Fariases argue that the trial court's decision to defer a ruling on the issue of jurisdiction until the trial on the merits was proper, relying on *Howard P. Foley Company v. Harris*, 10 Ariz.App. 78, 456 P.2d 398 (1969). The *Foley* decision is distinguishable on two grounds. First, the issue of jurisdiction in that case was determined in a separate trial to an advisory jury prior to the trial on the merits. *Foley* clearly does not stand for the proposition that a decision on the jurisdictional issue may be postponed until after a trial on the merits. Second, the appellant's objection in *Foley* to the utilization of an advisory jury was not raised until the appeal was taken. In the absence of a timely objection, the court held simply that the use of an advisory jury was not error. The court did not hold that the appellee had a right to a trial before an advisory jury.

In the present case, Ringling Brothers filed a motion to dismiss, accompanied by exhibits in support of its contentions. In light of this challenge, the burden then rested upon the Fariases to prove the existence of jurisdiction. Cf. *Magidow v. Coronado Cattle Company*, 19 Ariz. App. 38, 504 P.2d 961 (1972) (applied to personal jurisdiction). If the Fariases had wanted the issues submitted to an advisory jury, as in the *Foley* case, it was incumbent upon them to file a motion to that effect pursuant to Rule 39(k), Arizona Rules of Civil Procedure, 16 A.R.S., in response to Ringling Brothers' motion to dismiss. The granting of such a motion is in any event discretionary. Rule 39(k). Having failed to do so, and having submitted evidence in support of their contentions, the Fariases cannot now argue that a decision on the jurisdictional issue should await a further evidentiary hearing.

The petitioner's motion to dismiss is grounded on the premise that Julio Farias was an employee of Ringling Brothers within the meaning of the workmen's compensation laws, that he was injured in an accident arising out of and in the course of his employment, and that therefore the respondents' exclusive remedy under A.R.S. §§ 23–906 and 23–1022(A) was the right to recover workmen's compensation dependency benefits. The principal issue raised was whether the decedent was an employee of Ringling Brothers or an independent contractor. The Arizona courts have consistently held that the determination of this issue is governed by the "right to control" test, that is, whether the employer retains the right to supervise or control the method of reaching the result contracted for, or whether his control is limited to the result reached, leaving the method to the other party. *Blasdell v. Industrial Commission*, 65 Ariz. 373, 181 P.2d 620 (1947); *Fry v. Industrial Commission*, 26 Ariz.App. 140, 546 P.2d 1149 (1976). In making this determination, the court "must look to the totality of the facts and circumstances of each case examining the sign posts or indicia of control." *Reed v. Industrial Commission*, 23 Ariz.App. 591, 593, 534 P.2d 1090, 1092 (1975). No one factor is in itself controlling. *El Dorado Insurance Co. v. Industrial Commission*, 25 Ariz.App. 617, 545 P.2d 465 (1976). Among the relevant factors are those set forth in the Restatement of Agency, § 220:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

. (h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business."

See *Fry v. Industrial Commission*, supra. Other factors which the courts have considered include the terms of the parties' contract, the withholding from wages of state and federal income tax and social security payments, and the payments of workmen's compensation premiums. *Industrial Commission v. Meddock*, 65 Ariz. 324, 180 P.2d 580 (1947); *El Dorado Insurance Co. v. Industrial Commission*, supra.

In support of its contention that Julio Farias was its employee at the time of the accident, Ringling Brothers submitted the affidavit of Jerome Sowalsky, its vice president and general counsel, to which was attached a copy of an agreement dated October 2, 1979, which was prepared for "The Flying Farias" for the 1980 Ringling Brothers' season. The agreement is a standard form "engagement contract" prepared by the American Guild of Variety Artists (AGVA) and incorporates by reference the collective bargaining agreement between AGVA and Ringling Brothers, a copy of which is also attached to the Sowalsky affidavit. The engagement contract was not executed in the space designated for signature on behalf of "The Flying Farias." Instead, the signatures of Julio Farias and the other members of the act appear beneath a subsequent provision of the agreement which states that "[w]e hereby individually endorse, accept, and acknowledge receipt of a copy of the above agreement together with riders and exhibits, to govern our employment by the Employer [Ringling Brothers]; and each of us will receive the weekly compensation written below next to his name ...." Although not conclusive of the question, both the engagement contract and the collective bargaining agreement specifically designate the individual artists as employees rather than independent contractors, and expressly reserve to Ringling Brothers as "Employer" the right to supervise, direct and control the employees. Attached to the engagement contract is a rider, also executed by Julio Farias and each member of the act, which provides:

"... Artist will work under the direction of the management and one of the members of the act will perform a tripple [sic] sommersault [sic] at each performance and at the request of the management one of the Flying Farias will attempt a 3½ sommersault [sic] at each performance."

Also attached to the Sowalsky affidavit were (1) the 1980 W–2 form prepared by Ringling Brothers for Julio Farias, showing federal income taxes and FICA withheld, (2) a Notice of Benefits Paid, showing the unemployment compensation paid to Julio Farias by the State of Florida, in conjunction with which Ringling Brothers was assessed unemployment compensation taxes, (3) a form of acknowledgement of workmen's compensation coverage (required by the State of Washington), which was executed by Carmeline, Julio and Fidel Farias, and (4) statements of claim for workmen's compensation benefits executed and filed by Fidel Farias and Rosalba Farias (Julio's mother) for injuries occurring while performing for Ringling Brothers on several occasions from 1976 through 1980.

Ringling Brothers also submitted with its motion the affidavit of Sal Cappellino, the Claims Division Manager of Argonaut Insurance Company, Ringling Brothers' workmen's compensation insurance carrier. The affidavit states that Ringling Brothers was insured for workmen's compensation coverage in Arizona and Florida, and is accompanied by copies of Notice of Injury reports executed by Julio Farias and filed with the Division of Workers' Compensation of the Florida Department of Labor and Employment Security for injuries occurring on March 13, May 3 and May 22, 1980, while in the employ of Ringling

Brothers. Also attached are copies of the report made of the injuries suffered by Julio on June 25, 1980, and the Notice of Injury filed with the Florida Division of Worker's Compensation. The affidavit states that the claim was accepted by Argonaut and that over $11,000 in medical expenses incurred between June 25 and June 30, 1980, as a result of Julio's fatal injuries, were paid by the carrier.

Although the Farias' response emphatically denies that Julio Farias was an employee of Ringling Brothers, they argue somewhat inconsistently that he was an independent contractor and that he was an employee of Fidel Farias, who was acting as an independent contractor on behalf of the members of the act. Relying on the factors set forth in the Restatement of Agency quoted above, the Fariases contend principally that they were a highly skilled and specialized act over which Ringling Brothers exercised no control whatsoever. In support of these contentions, the Farias' response quotes at length from the deposition of Fidel Farias, Jesus Segrera (the leader of another trapeze act), and defendant Bob MacDougall, the general manager of Ringling Brothers' circus, to establish that Ringling Brothers never actually supervised or directed its trapeze acts. The Fariases also submitted the affidavit of Fidel Farias in which he states that he was the "owner" of the Flying Farias act, that he was the only person who was authorized and did exercise any supervision or control over the members of the act, and that he "never had any intention of creating any relationship for me or the members of my troupe with the Ringling Bros. Barnum and Bailey circus other than one of an independent contractor." The affidavit further recites that Mr. Farias had no knowledge that Ringling Brothers was providing workmen's compensation benefits, and that neither he nor his wife had claimed or accepted any such benefits on behalf of their son Julio. The affidavit also states that Fidel Farias was assured by Ringling Brothers that he was an independent contractor, and that since he could not read or understand the contracts due to his limited knowledge of English, he signed the same only on the basis of those assurances.

■ The Farias' argument totally misses the point that, under Arizona law, it is the reservation of the *right* to control, rather than the actual exercise of control, that is determinative of employee status. *Blasdell v. Industrial Commission,* supra. Both the engagement contract and the AGVA-Ringling Brothers collective bargaining agreement expressly reserve that right to Ringling Brothers, and in fact the right was exercised in the provisions of the rider requiring the act to perform certain tricks at each performance. Further, reservation of the right to control does not require that the employer have the right to direct the technical manner of the services to be performed by highly skilled individuals, so long as the employer has the right to direct the time and place in which the services are to be rendered, the persons to or for whom the services are to be rendered, and the degree and amount of such services. See *Industrial Commission v. Navajo County,* 64 Ariz. 172, 167 P.2d 113 (1946). The Fariases do not contend that either Fidel Farias or Julio Farias had the right to determine when, where or before whom they would perform, and it is clear from the record that such matters were decided solely by Ringling Brothers.

■ The statements in Fidel Farias' affidavit as to his understanding of his relationship with Ringling Brothers provide no support for the Farias' position. In the first place, such statements constitute parol evidence which is inadmissible to vary the terms of what is clearly a complete and integrated contract. *Brand v. Elledge,* 101 Ariz. 352, 419 P.2d 531 (1966). Second, and more important, the issue here is not Fidel Farias' status, but rather the relationship between Julio Farias and Ringling Brothers. The undisputed evidence shows that Julio Farias signed the engagement contract with Ringling Brothers, that he was paid individually by Ringling Brothers, that Ringling Brothers withheld federal income tax and FICA from his wages and paid

unemployment compensation taxes on his behalf. The evidence further establishes that Ringling Brothers maintained workmen's compensation insurance for Julio's benefit, which was expressly acknowledged by the decedent, and that Julio executed claims for such benefits on three occasions in 1980 alone. The fact that neither of his parents applied for such benefits on his behalf and were unaware that Ringling Brothers was maintaining such coverage on Julio is irrelevant. Considering the totality of the facts and circumstances in this case, we can only conclude that Julio Farias was an employee of Ringling Brothers within the meaning of Arizona's workmen's compensation statutes.

■ The Fariases also argue that Julio's accident did not occur while he was acting in the course of his employment. This argument is without merit. The complaint alleges that Julio was rehearsing his act at the Tucson Community Center, where the evening's performance was to take place. Further, it is clear from the terms of the AGVA collective bargaining agreement, which was incorporated by reference into the Farias' engagement contract, that the employment of artists covered by the contract included rehearsals as well as actual performances.

The Farias' final argument is that Ringling Brothers' failure to post notices of workmen's compenation coverage and make available to its employees the notice of election forms required under A.R.S. § 23–906, permits the Fariases to elect under subsection E of that section to proceed with this action rather than accepting workmen's compensation benefits. A review of the amended complaint, which is composed of six separate counts, reveals that the allegation of failure to comply with § 23–906 is made only in count six, a vaguely worded count which purports to allege negligent infliction of emotional distress, employer negligence and employer liability. No such allegation is made in the other five counts.

■ As to counts one through four, which allege claims derivative from the decedent's injuries and death, even if the failure to post the required notices had been alleged, the Arizona Supreme Court has held that the option given by A.R.S. § 23–906(E) is personal to the employee and cannot be exercised by the employee's personal representative. *Jackson v. Northland Construction Co.,* 111 Ariz. 387, 531 P.2d 144 (1975); see also *Johnson v. Kerr-McGee Oil Industries, Inc.,* 129 Ariz. 393, 631 P.2d 548 (App.1981) (applying the federal Workmen's Compensation Act). On the basis of our conclusion that Julio Farias was an employee of Ringling Brothers and that he was injured in the course of his employment, we hold that the trial court lacked jurisdiction over counts one through four of the amended complaint, and that Ringling Brothers' motion to dismiss as to those counts must be granted.

■ Count five of the amended complaint alleges a totally separate cause of action, that is, negligent infliction of emotional distress, which is personal to those plaintiffs who actually witnessed the accident. See *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979). The trial court's denial of Ringling Brothers' separate motion to dismiss this count for failure to state a claim upon which relief can be granted is not before this court in this special action, and we therefore express no opinion as to the merits of this claim. With regard to subject matter jurisdiction, however, the fact that this claim is personal to the witnessing plaintiffs (Fidel, Carmeline and Gregorio Farias) does not end our inquiry.

■ Under Arizona law, disability arising from a severe emotional reaction to an unexpected event is a compensable injury under the workmen's compensation statutes. *Brock v. Industrial Commission,* 15 Ariz.App. 95, 486 P.2d 207 (1971); see also *Archer v. Industrial Commission,* 127 Ariz. 199, 619 P.2d 27 (App.1980) (compensation denied on the basis of insufficient causal relationship between the injury and the accident). Although the evidence presented to the court dealt mainly with

the status of Julio Farias, the record establishes that these three plaintiffs also signed the engagement contract and were paid individually by Ringling Brothers, that they expressly acknowledged their coverage under the workmen's compensation statutes, and that they also collected unemployment compensation for which tax contributions were assessed to Ringling Brothers. Accordingly, we hold that Fidel Farias, Carmeline Farias and Gregorio Farias were also employees of Ringling Brothers, and that any injury which they may have suffered as a result of witnessing Julio's accident occurred in the course of their employment. As in the case of counts one through four, no allegation of a failure to post the notices required by A.R.S. § 23–906(E) was made in count five. The trial court therefore lacked subject matter jurisdiction of count five of the first amended complaint as well.

As to count six, although it is difficult to discern the nature of the cause of action alleged, this count does contain an allegation that the requirements of § 23–906(E) were not met by Ringling Brothers. Since Ringling Brothers' motion to dismiss was based solely on the ground that workmen's compensation provided the plaintiffs' only remedy, the trial court properly denied the motion as to this count.

The order denying Ringling Brothers' motion to dismiss is affirmed as to count six of the plaintiffs' first amended complaint. The order denying Ringling Brothers' motion is vacated as to counts one through five inclusive of the plaintiffs' first amended complaint, and the trial court is directed to enter an order granting the petitioner's motion to dismiss for lack of subject matter jurisdiction as to those counts.

HOWARD, C.J., and BIRDSALL, J., concur.