781 P.2d 63

**William SANTIAGO, a single man, Plaintiff/Appellant,**

v.

**PHOENIX NEWSPAPERS, INC., an Arizona corporation, Defendant/Appellee.**

**No. 2 CA–CV 88–0217.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 8, 1988.

Review Granted April 21, 1989.

Law Offices of James F. Brook by Ste-
ven L. Reed, Tempe, for plaintiff/appellant.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg and Jean E. Huffington, Phoenix, for defendant/appellee.

## OPINION

LACAGNINA, Chief Judge.

William Santiago appeals from summary judgment granted in favor of Phoenix Newspapers, Inc. (PNI), the court finding that PNI was neither vicariously nor independently liable for injuries Santiago sustained in a collision between Santiago's motorcycle and the automobile of a PNI delivery agent.

## FACTS

On the morning of April 20, 1986, Santiago was riding his motorcycle southbound on Hardy Drive near its intersection with Tenth Street in Tempe, Arizona. Frank Frausto made a left turn southbound onto Hardy Drive from Tenth Street and, as Frausto began a right turn off Hardy onto Tenth Place, his vehicle struck Santiago's motorcycle. Santiago filed a negligence action against Frausto and PNI alleging that Frausto had been acting as PNI's employee at the time of the collision. When the accident occurred, Frausto was delivering the Sunday edition of the Arizona Republic, which PNI publishes, pursuant to a Delivery Agent Agreement with PNI.

The trial court granted PNI's motion for summary judgment on the issue of vicarious liability based on the theory of *respondeat superior*, but permitted Santiago to amend his complaint to allege that PNI had been negligent in the selection, hiring and supervision of Frausto as its agent. Again, PNI moved for summary judgment which the court granted.

In entering judgment in favor of PNI, the court found no genuine issues of material fact and concluded that Frausto was an independent contractor and that PNI was not vicariously liable for his negligence. The court additionally concluded that PNI was not liable for negligent supervision, negligent selection or negligent hiring of Frausto.

The Delivery Agent Agreement between Frausto and PNI provided that PNI had retained Frausto's services as an "independent contractor" to provide "prompt delivery" of its newspapers at or before times specified in the contract. Frausto was to be paid a weekly delivery fee which could be reduced by a pro rata amount of $\frac{1}{7}$th for each daily route not delivered. The contract was for a period of six months, renewable at PNI's option. Either party could terminate the agreement upon written notice if the other party failed to fully perform any of its obligations. Specifically, cause for termination by PNI would exist "if service complaints from home delivery subscribers exceed acceptable level, Delivery Agent fails to maintain acceptable subscriber relations or fails to provide satisfactory service." The contract defined "satisfactory service" as follows: "Each home delivery newspaper will be banded and inserted into plastic bags on inclement weather days to assure the newspaper is received in a dry and readable condition." The agreement stated that the delivery agent, Frausto, was not an employee of PNI, but rather a self-employed independent contractor. As an independent contractor, a delivery agent had "the right to operate the business as he chooses." The agreement allowed an agent to hire his own employees and to engage subagents to participate in the actual delivery of the newspapers for no more than 25% of the delivery days. Additionally, the contract allowed a delivery agent to pursue any other business activities, including delivery of other publications or products, "so long as any such other business activities do not interfere with the Delivery Agent's performance" under the PNI contract. The delivery agent was required to provide his own vehicle and to provide the rubber bands and plastic bags necessary to effect satisfactory home delivery service. Finally, the contract provided:

> The Company is interested only in the results to be obtained by the Delivery Agent as described in this agreement, and the manner and means to be employed by the Delivery Agent are matters entirely within the authority and dis-

cretion of the Delivery Agent over which the Company has no authority or jurisdiction.

Pursuant to his Delivery Agent Agreement, Frausto received a delivery list from PNI containing the addresses of certain subscribers and was required to deliver to all the customers on that list and no more. He received the newspapers at a specified distribution point on the date for delivery and loaded them into his vehicle himself. Frausto drove a 1980 Toyota Corolla, and he provided PNI satisfactory proof of liability insurance and a valid driver's license. PNI obtained a report from the Arizona Motor Vehicle Division which showed no history of errant driving by Frausto.

## ISSUES ON APPEAL

Santiago contends that the Delivery Agent Agreement and the course of performance of the agreement raised sufficient factual issues or inferences regarding PNI's control of the operative details of Frausto's job to preclude summary judgment and that a trier of fact must decide whether an employment relationship existed. Additionally, he argues that because a PNI representative who brought the newspapers to the distribution point observed Frausto loading papers into his car, a factual question is raised as to whether PNI negligently supervised Frausto in that it had notice that the number of papers which Frausto carried in his delivery route blocked his view through the rear windows of his vehicle.

## STANDARD OF REVIEW

In reviewing the granting of summary judgment, we view the evidence in the light most favorable to Santiago including the benefit of all reasonable inferences which can be drawn from the evidence. If there is the slightest doubt as to the existence of issues involving material facts, we must reverse summary judgment in favor of a trial on the merits. Even if there is no factual dispute, summary judgment is inappropriate if possible inferences to be drawn from the undisputed facts are in conflict. *Northern Contracting Co. v. Allis–Chal-*

*mers Corp.,* 117 Ariz. 374, 573 P.2d 65 (1977).

## RESPONDEAT SUPERIOR

█ The liability of PNI for Frausto's negligence centers on a determination of whether Frausto was an independent contractor or an employee of PNI under the terms and performance of the Delivery Agent Agreement. The determination of that issue is governed by the "right to control" test, that is, whether the employer retains the right to supervise or control the method of reaching the result contracted for, or whether the employer's control is limited to the result, leaving the method to the other party. *Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Court,* 140 Ariz. 38, 42, 680 P.2d 174, 178 (App.1983). Thus, courts must examine the indicia of control arising from the total facts and circumstances of each case. *Id.*

Arizona courts look to the Restatement (Second) of Agency for the rules to determine the presence of an employer-employee relationship. *Ringling Bros., supra.,* 140 Ariz. at 42, 680 P.2d at 178. The Restatement (Second) of Agency § 220 (1958) defines a "servant" or employee as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Comment c provides that it is generally for the trier of fact to determine whether or not the facts and circumstances establish an employer-employee relationship; however, "[i]f the inference is clear that there is, or is not, a master and servant relation, [the determination] is made by the court." Thus, in this case, we examine the undisputed facts presented to the trial court to determine whether the inference from those facts is clear that there is not an employer-employee relationship between PNI and Frausto. Otherwise, a jury must determine the issue. Restatement (Second) of Agency § 220 comment c.

The Restatement sets forth a nonexhaustive list of factors which are to be considered in determining whether an employer has the right to control the employee's physical conduct or method of performance of the services. We will not lengthen this opinion with a discussion of each of those factors. However, the ultimate test is the right to control the method rather than the result. The contract between Frausto and PNI contemplated a specific result: the timely delivery of newspapers in a satisfactory condition to a particular group of subscribers.

■ Santiago raises three factors which he claims indicate such control so as to require that the question whether Frausto was PNI's employee be decided by a jury. First, he relies on a clause of the Delivery Agent Agreement which provides:

> The Delivery Agent shall allow any authorized Company employee or its designated representative to accompany him for the purposes of verifying distribution, subscriber service, or regular newspaper business.

That clause does not indicate PNI's control of Frausto's method of accomplishing satisfactory subscriber service, but rather PNI's ability to insure that its delivery agent performs in such a way that the intended result is achieved.

■ Second, Santiago argues that because Frausto considered himself a PNI employee and would have performed his tasks as directed by a PNI supervisor, that creates the employer-employee relationship. We do not agree. Frausto executed a contract which specifically provides that he is not an employee of PNI but is a self-employed independent contractor. Frausto's affidavit, when considered with the other facts and circumstances presented, does not raise an issue which would preclude summary judgment. One party's characterization of the relationship is not dispositive of the issue. *Anton v. Industrial Commission*, 141 Ariz. 566, 688 P.2d 192 (App.1984).

■ Finally, Santiago argues that because PNI receives customer complaints and conveys them to the delivery agent, it exercises control over the method of the work, particularly because PNI can terminate the Delivery Agent Agreement on the basis of too many complaints indicating unsatisfactory delivery service. Specifically, Santiago points to an incident testified to by Frausto in his deposition. Frausto's wife had delivered his Sunday papers for a length of time because Frausto was working another job and was unable to deliver his route. He testified that PNI notified him of numerous customer complaints regarding missed papers and informed him that the agreement would be terminated because his wife's errors resulted in unsatisfactory delivery service. Again, that evidence only indicates PNI's interest in the contracted-for result, satisfactory delivery to its subscribers.

■ We do not believe that the facts presented raise any issue which would preclude summary judgment on the question of vicarious liability. *See Throop v. F.E. Young and Co.*, 94 Ariz. 146, 382 P.2d 560 (1963) (no fact question presented where company had no right to control sale representative's schedule, method of sales, or operation of vehicle). Parties have a perfect right, in their dealings with each other, to establish the independent contractor status in order to avoid the relationship of employer-employee, and it is clear from the undisputed facts that there was no employer-employee relationship created between PNI and Frausto. *Ariz. Dept. of Economic Security v. King*, 122 Ariz. 158, 161, 593 P.2d 908, 912 (1979), *quoting, Saiki v. United States*, 306 F.2d 642, 652 (8th Cir. 1962). Thus, the trial court properly granted summary judgment on the issue of *respondeat superior*. A principal or employer is not vicariously liable for the negligence of its independent contractor in the performance of the contract. *See Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 65 P.2d 35 (1937); Restatement (Second) of Torts § 409 (1965).

## INDEPENDENT NEGLIGENCE

The employer of an independent contractor generally is not liable for injuries

caused to another by the contractor's negligence. Restatement (Second) of Torts § 409 (1965). An exception to that general rule exists, however, if a third person suffers injuries caused by an independent contractor acting pursuant to orders or directions negligently given by its employer. Restatement (Second) of Torts § 410. Comment b to § 410 provides:

> This section deals only with the liability of an employer who does not intend that the contractor shall cause physical harm to any other person, but who either employs a contractor to do work which, no matter how carefully done, involves an unreasonable risk of physical harm to others to whom he owes a duty to exercise care, or *who employs a contractor to do work which could be safely done but for the fact that he directs the contractor to do it in a manner involving such risk.* The liability is based upon the fact that the employer has been negligent in directing his contractor to do work which is dangerous in itself or in the manner in which it is done.

(Emphasis added). Santiago contends that because PNI directed Frausto to deliver 177 Sunday papers in his subcompact car on the date of the accident, PNI created an unreasonable risk of harm to others on the road. In his deposition, Frausto testified that he could not see out of the rear window or the rear side windows of his car when it was loaded with papers. Santiago claims that the type of risk involved in Frausto's delivery of newspapers is one that was foreseeable to PNI as a result of its contracting with delivery agents to transport large volumes of newspapers in ordinary economy cars. He claims that by controlling the number of newspapers to be delivered on a particular day on a particular route, PNI determines the load the agent will carry and the visibility from the agent's vehicle. Therefore, he argues, PNI's direction to Frausto to deliver a certain number of newspapers on the date of the accident and its knowledge of the type of vehicle used by Frausto were contributing causes of his injuries. Additionally, Santiago relies on Frausto's deposition testimony that a PNI employee observed him load his car with newspapers at the designated distribution point.

Santiago relies on *Matsumato v. Arizona Sand & Rock Co.*, 80 Ariz. 232, 295 P.2d 850 (1956), in support of his contention that PNI knew or should have known that Frausto's car was overloaded such that his view while driving was impaired, and that PNI had the obligation to limit the size of delivery routes so that such overloading did not occur. In *Matsumato*, a company had been engaged to supply sand and rock to a construction site. The company hired a trucking firm to transport the sand and rock from its excavation site to the construction site. The company physically loaded all of the trucks with sand and rock, but the trucking firm's driver would advise the company when the truck was loaded to capacity. Evidence indicated that some of the trucks were overloaded, resulting in rocks being scattered over the highway. One of those rocks was kicked up by an unidentified vehicle and struck the plaintiff, causing injuries. Our supreme court found that the sand and rock company was liable under § 414 of the Restatement (Second) of Torts. The court found that the rock company owed a general duty to the public not to knowingly overload the trucks and that such duty existed regardless of requests by the trucking firm's driver to exceed the maximum load. The court found that the sand and rock company would be negligent and liable to persons injured if, in loading the trucks, it was able to or should have foreseen an unreasonable risk of harm caused by overloading. Santiago claims that PNI's control over the size of the agent's delivery routes and its knowledge of the types of vehicles utilized by the delivery agents created a similar question of foreseeability. We disagree, and we find *Matsumato* to be distinguishable.

██ There is no evidence that PNI directed Frausto in anything beyond the number of newspapers to be delivered on a given day. PNI did not load Frausto's car, nor did it tell Frausto how to load and carry the newspapers, nor is there any evidence that PNI required Frausto to fold

92

and band and then place all of the newspapers in his automobile at one time. Additionally, the fact that a PNI distribution employee may have observed Frausto loading his vehicle does not constitute such direction or control as to create liability. The Restatement (Second) of Torts § 414, comment c, provides that an employer's general right to inspect the work of the independent contractor does not amount to control as to method of the work and therefore does not result in independent liability for the contractor's negligence. In this case, there is nothing to indicate that Frausto was not entirely free to do the work in his own way. If the Restatement does not impose liability for a right of inspection, then casual observation of the loading by a PNI worker should not create such liability.

■ Finally, we note that Frausto's method of loading his automobile so as to obstruct his vision through his rear view mirror and rear windows does not violate the statutes governing traffic in Arizona. See A.R.S. §§ 28–893 and 28–956. At most, a vehicle with a load which obstructs vision to the rear must have a mirror which allows the driver to see at least 200 feet to the rear. Frausto stated that his automobile has mirrors on both the driver and passenger side.

The trial court properly granted summary judgment on the issue of independent liability.

The judgment entered in favor of PNI is affirmed.

ROLL, P.J., and FERNANDEZ, J., concur.