794 P.2d 138

William SANTIAGO, a single man, Plaintiff/Appellant,

v.

PHOENIX NEWSPAPERS, INC., an Arizona corporation, Defendant/Appellee.

No. CV–89–0042–PR.

Supreme Court of Arizona, En Banc.

July 3, 1990.

Law Offices of James F. Brook by James F. Brook, Steven L. Reed, Tempe, for plaintiff-appellant.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg, Jean E. Huffington, Phoenix, for defendant-appellee.

## OPINION

SARAH D. GRANT, Chief Judge, Court of Appeals.

The appellant, William Santiago (Santiago), asks this court to review the court of appeals' decision affirming the trial court's entry of summary judgment in favor of Phoenix Newspapers, Inc. (PNI). We granted review to consider whether the trial court correctly found as a matter of law that PNI was not vicariously liable for the injuries Santiago sustained in a collision with a PNI delivery agent. *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## PROCEDURAL HISTORY

On April 20, 1986, a car driven by Frank Frausto (Frausto) collided with a motorcycle driven by Santiago. At the time Frausto was delivering the Sunday edition of the Arizona Republic on his route for PNI. Santiago filed a negligence action against Frausto and PNI, alleging that Frausto was PNI's agent. Both parties moved for summary judgment. The court, finding no genuine issues of material fact, concluded that Frausto was an independent contractor. The court of appeals agreed, stating that "[p]arties have a perfect right, in their

dealings with each other, to establish the independent contractor status in order to avoid the relationship of employer-employee, and it is clear from the undisputed facts that there was no employer-employee relationship created between PNI and Frausto." *Santiago v. Phoenix Newspapers, Inc.*, 162 Ariz. 86, 90, 781 P.2d 63, 67 (1988). Santiago seeks review of this ruling.[1]

## FACTS

We view the facts most favorably to Santiago, as the party opposing the summary judgment. *See, e.g., Tribe v. Shell Oil Co.*, 133 Ariz. 517, 652 P.2d 1040 (1982).

Frausto began delivering papers for PNI in August 1984 under a "Delivery Agent Agreement," prepared by PNI. The agreement provided that Frausto was an "independent contractor," retained to provide prompt delivery of its newspapers by the times specified in the contract. Although Frausto had the right to operate the business as he chose, he could engage others to deliver papers on his route for no more than 25% of the delivery days. He was free to pursue any other business activities, including delivering other publications, so long as those activities did not interfere with his performance of the PNI contract. Frausto was also required to provide PNI with satisfactory proof of liability insurance, a valid driver's license, and a favorable report from the Arizona Motor Vehicle Division.

The contract was for a period of six months, renewable at PNI's option. Either party could terminate the agreement prior to six months without cause with 28 days notice and for cause with no notice. Under the contract, cause for termination by PNI existed if complaints from home delivery subscribers exceeded an undefined "acceptable" level, or if Frausto failed to maintain "acceptable" subscriber relations or provide "satisfactory service," defined as banding and bagging newspapers to insure

they were received in a dry and readable condition. PNI was also free to breach the agreement if it ceased publishing the paper, defined in the contract as "excusable non-compliance." There is no correlative definition of cause for termination by Frausto. Customers paid PNI directly and any complaints about delivery were funnelled through PNI to Frausto. Additionally, the contract required Frausto to allow a PNI employee to accompany him on his route "for the purposes of verifying distribution, subscriber service, or regular newspaper business."

Early each morning, Frausto drove to a PNI-specified distribution point to load the papers into his car. He then delivered the papers before a PNI-specified time to addresses on a delivery list provided and owned by PNI. He could deliver the papers to listed addresses only. When customers were added to and taken from this list by PNI, Frausto was required to incorporate these changes into his route. According to Frausto, the number of papers delivered fluctuated by as much as thirty papers. For these services, PNI paid Frausto a set amount each week. That amount did not vary when addresses within or beyond the contracted delivery area were added to or taken away by PNI from the delivery list. PNI provided Frausto with health and disability insurance, but did not withhold any taxes.

In ruling on the summary judgment motion, the court considered the affidavits of Frausto and David L. Miller, a delivery agent and former employee driver. Frausto stated in his affidavit that, despite the contractual nomenclature, he considered himself an employee and delivered the papers any way his supervisor directed him to. This included placing the paper in a particular spot if requested by a customer. If he did not comply with these requests, his supervisor would speak to him and he could be fired. Miller stated in his affidavit that he had been a service driver, later

---

**1.** The trial court granted PNI's motions for summary judgment on the issues of vicarious liability and negligence in hiring and supervising Frausto as its agent. Santiago does not seek

review of the court's decision on the negligent hiring and supervising claim. Frausto is not a party to this petition.

switched to being a delivery agent, and that, in his view, there was no significant difference between the level of supervision provided to those holding the two positions.

## DISCUSSION

The court may grant summary judgment only if no dispute exists as to any material facts, if only one inference can be drawn from those facts, and if the moving party is entitled to judgment as a matter of law. *Tribe*, 133 Ariz. at 518, 652 P.2d at 1041; *Corral v. Fidelity Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App.1981). Even when the facts are undisputed, summary disposition is unwarranted if different inferences may be drawn from those facts. *Tribe*, 133 Ariz. at 519, 652 P.2d at 1042; Smith, Arizona Civil Trial Practice, § 314 at 277 (1986). If the inference in this case is clear that no master-servant relationship exists, the trial court was correct in granting summary judgment; if it is not clear, the case should have been presented to the jury to decide. *See Restatement (Second) of Agency* § 220 comment c (1958); *Northern Contracting Co. v. Allis–Chalmers Corp.*, 117 Ariz. 374, 376, 573 P.2d 65, 67 (1977). We apply the rule in this case by asking whether the courts below correctly decided that no inferences could be drawn from the material facts suggesting Frausto was acting as PNI's employee when the accident occurred.

Section 220 of the *Restatement (Second) of Agency*, adopted by Arizona, *see Driscoll v. Harmon*, 124 Ariz. 15, 17, 601 P.2d 1051, 1053 (1979); *Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 363, 519 P.2d 61, 62 (1974); *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 150–51, 382 P.2d 560, 563 (1963), defines a servant as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." The *Restatement* lists several additional factors, none of which is dispositive, in determining whether one acting for another is a servant or an independent contractor. We now review those factors, along with the cases considering them, for evidence of an employer-employee relationship which could preclude the entry of summary judgment.

■ As a prefatory note, we reject PNI's argument that the language of the employment contract is determinative.[2] Contract language does not determine the relationship of the parties, rather the "objective nature of the relationship, [is] determined upon an analysis of the totality of the facts and circumstances of each case." *Anton v. Industrial Commission*, 141 Ariz. 566, 568, 688 P.2d 192, 194 (App.1984); *Home Ins. Co. v. Industrial Commission*, 123 Ariz. 348, 350, 599 P.2d 801, 803 (1979). Chief Judge Cardozo states that

> We think there is evidence to sustain the finding of the board that claimant was a servant employed to sell the milk and cream of his employer in return for a commission. The contract is adroitly framed to suggest a different relation, but the difference is a semblance only, or so the triers of fact might find.

*Glielmi v. Netherland Dairy Co.*, 254 N.Y. 60, 62, 171 N.E. 906, 906–07 (1930).

The fundamental criterion is the extent of control the principal exercises or may exercise over the agent. *Central Management v. Industrial Commission*, 162 Ariz. 187, 190, 781 P.2d 1374, 1377 (App.1989); *Hamilton v. Family Record Plan, Inc.*, 71 Ill.App.2d 39, 47, 217 N.E.2d 113, 117 (1966); *see also Greening v. Gazette Printing Co.*, 108 Mont. 158, 165, 88 P.2d 862, 864 (1939) (contract terms between carrier and printer not binding on third party; "[i]f one is injured by the servant of another, it

---

**2.** The agreement is drafted with the intent of designating delivery agents, such as Frausto, independent contractors. It specifically labels agents as independent contractors, and recites that

> [t]he Company is interested only in the results to be obtained by the Delivery Agent as de-

scribed in this agreement, and the manner and means to be employed by the Delivery Agent are matters entirely within the authority and discretion of the Delivery Agent over which the Company has no jurisdiction.

is immaterial to him what the terms of the agreement between employer and employee might be. The liability must come from the fact that the employer exercises control over the actions of the person in his employment."); *Femling v. Star Publishing Co.,* 195 Wash. 395, 405, 81 P.2d 293, 298, *set aside on other grounds,* 195 Wash. 395, 84 P.2d 1008 (1938) (question of employer-employee relationship was for jury, notwithstanding contractual provision that carrier was not an employee in any sense).

In determining whether an employer-employee relationship exists, the fact finder must evaluate a number of criteria. They include:

1. The extent of control exercised by the master over details of the work and the degree of supervision;
2. The distinct nature of the worker's business;
3. Specialization or skilled occupation;
4. Materials and place of work;
5. Duration of employment;
6. Method of payment;
7. Relationship of work done to the regular business of the employer;
8. Belief of the parties.

### ANALYSIS OF RELATIONSHIP BETWEEN FRAUSTO AND PNI

1. *The extent of control exercised by the master over the details of the work*

■ Such control may be manifested in a variety of ways. A worker who must comply with another's instructions about when, where, and how to work is an employee. *See Restatement* § 220 comment h. In *Throop,* 94 Ariz. 146, 382 P.2d 560, the plaintiff's husband was killed in a collision with a car driven by Hennen, a salesman for the defendant company. Plaintiff sought recovery against the company on a theory of vicarious liability. At the close of evidence, the trial court granted a directed verdict in favor of the company. On appeal, we examined the record for evidence of the company's control. Hennen was required to call on accounts in person and to present all inventory items, to submit written reports on these visits and to make collections. Although Hennen had these responsibilities for a seven-year period, he could sell anywhere in the country, visit prospects whenever he chose, use his own vehicle exclusively, and select all prospects himself, visiting the office only a few times a year. Based on these facts, we agreed the trial court properly directed the verdict in the company's favor because no reasonable juror could find it had exercised sufficient control over Hennen to make him an employee.

■ Missing in *Throop* was the right to control the details of how Hennen made his sales. Where this right of control exists, the inference of the employer-employee relationship is strengthened. For example, an appellate court overturned the trial court's finding of no employer-employee relationship in *Gallaher v. Ricketts,* 187 So. 351, 355 (La.Ct.App.1939). The newspaper carrier in *Gallaher* provided his own transportation and was paid a commission for every dollar worth of papers delivered on his assigned route. The company conducted training programs, including tips on how to distribute the paper and stimulate sales, reimbursed him for some transportation expenses, and retained the right to terminate him at any time. The court concluded that these indices of control demonstrated that the carrier "was merely a cog in the wheel of the defendant's enterprise," and held that Ricketts was an employee. *Id.* at 355. *See also Harris v. Cochran,* 288 S.W.2d 814 (Tex.Civ.App.1956) (Court sustained verdict against a publisher for injuries caused by its carrier to a pedestrian. Like Frausto, the carrier was required to throw papers to all patrons on the route, to add customers when necessary, and to use his own transportation in delivery. All payments received by the carrier were turned over to the paper and the carrier did not buy any of the papers for delivery. In addition to the fact that the carrier was paid by the hour, he ran personal errands for the manager, and received waxed paper for the papers on rainy days from the company.).

A strong indication of control is an employer's power to give specific instructions

with the expectation that they will be followed. *See Cooper v. Asheville Citizen–Times Publishing Co.*, 258 N.C. 578, 589, 129 S.E.2d 107, 115 (1963) ("It would seem the Publishing Company had the legal right to require that Sumner meet any reasonable request of a subscriber with reference to the manner in which he delivered the newspaper."); *see also Press Publishing Co. v. Industrial Accident Commission*, 190 Cal. 114, 121, 210 P. 820, 823 (1922) ("One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed."); *Femling*, 195 Wash. at 409, 81 P.2d at 298 (jury could find carrier was an employee where carrier agreed to abide by rules and conditions contained in contract as well as "any other rules and conditions which may be in effect now or hereafter."). In deciding whether a worker is an employee we look to the totality of the circumstances and the indicia of control. *Central Management*, 162 Ariz. at 190, 781 P.2d at 1377.

In this case, PNI designated the time for pick-up and delivery, the area covered, the manner in which the papers were delivered, *i.e.*, bagged and banded, and the persons to whom delivery was made. Although PNI did little actual supervising, it had the authority under the contract to send a supervisor with Frausto on his route. Frausto claimed he did the job as he was told, without renegotiating the contract terms, adding customers and following specific customer requests relayed by PNI.

### 2. The distinct nature of the worker's business

■ Whether the worker's tasks are efforts to promote his own independent enterprise or to further his employer's business will aid the fact finder in ascertaining the existence of an employer-employee relationship. *Tanner v. USA Today*, 179 Ga. App. 722, 347 S.E.2d 690 (1986). The agent in *Tanner* contracted with USA Today to distribute papers. The agent in turn hired carriers to deliver the papers using his trucks. USA Today had no control over the choice of drivers, the trucks used, or the route taken. Under these circumstances, and despite USA Today's imposition of time parameters for delivery, the court found insufficient evidence to raise the issue of an employer-employee relationship.

A concomitant inquiry to this factor also considers whether the worker's job performance results in a profit or loss for the worker. Thus, where the worker purchases the product and then sells it at a profit or loss, the worker is more likely to be found an independent contractor. *See Luedtke v. Arizona Family Restaurants*, 158 Ariz. 442, 444, 763 P.2d 262, 264 (1988) *vacated in part on other grounds*, 160 Ariz. 500, 774 P.2d 804 (1989). *Compare Fleming v. Foothill–Montrose Ledger*, 71 Cal.App.3d 681, 139 Cal.Rptr. 579 (1977), *with Press Publishing Co.*, 190 Cal. at 119, 210 P. at 822.

As far as the nature of the worker's business, Frausto had no delivery business distinct from that of his responsibilities to PNI. Unlike the drivers in *Tanner*, Frausto had an individual relationship and contract with the newspaper company. Furthermore, he did not purchase the papers and then sell them at a profit or loss. Payments were made directly to PNI and any complaints or requests for delivery changes went through PNI. If Frausto missed a customer, a PNI employee would deliver a paper.

### 3. Specialization or skilled occupation

■ The jury is more likely to find a master-servant relationship where the work does not require the services of one highly educated or skilled. *See Restatement* § 220 comment h. PNI argues that its agents must drive, follow directions, and be diligent in order to perform the job for which they are paid. However, these skills are required in differing degrees for virtually any job. Frausto's services were not specialized and required no particular training. In addition, an agreement that work cannot be delegated indicates a master-servant relationship. *Restatement* § 220 comment j. In this case, Frausto could

delegate work but only up to twenty-five percent of the days.

### 4. *Materials and place of work*

If an employer supplies tools, and employment is over a specific area or over a fixed route, a master-servant relationship is indicated. *Restatement* § 220 comment h. In this case, PNI supplied the product but did not supply the bags, rubber bands, or transportation necessary to complete the deliveries satisfactorily. However, PNI did designate the route to be covered.

### 5. *Duration of employment*

■ Whether the employer seeks a worker's services as a one-time, discrete job or as part of a continuous working relationship may indicate that the employer-employee relationship exists. The shorter in time the relationship, the less likely the worker will subject himself to control over job details. *See Restatement* § 220 comment j. In addition, the employer's right to terminate may indicate control and therefore an employer-employee relationship. The "right to fire" is considered one of the most effective methods of control. *Lassiter v. Cline*, 222 N.C. 271, 274, 22 S.E.2d 558, 560 (1942); *see also Press Publishing Co.*, 190 Cal. at 119–20, 210 P. at 823.[3] In this case, the contract provided for a six-month term, renewable as long as the carrier performed satisfactorily. Frausto could be terminated without cause in 28 days and with cause immediately. The definition of cause in the contract was defined only as a failure to provide "satisfactory" service. A jury could reasonably infer that an employer-employee relationship existed since PNI retained significant latitude to fire Frausto inasmuch as the "satisfactory service" provision provides no effective standards. In addition, the jury

could also infer that PNI provided health insurance to encourage a long-term relationship and disability insurance to protect itself in case of injury to the carrier, both of which support the existence of an employer-employee relationship.

### 6. *Method of payment*

■ PNI paid Frausto each week, but argues that because Frausto was not paid by the hour, he was an independent contractor. Santiago responds that payment was not made by the "job" because Frausto's responsibilities changed without any adjustment to his pay or contract. *Compare Fleming*, 71 Cal.App.3d 681, 139 Cal. Rptr. 579, *with Press Publishing Co.*, 190 Cal. 114, 210 P. 820 (finding that carriers who bear the loss for nonpayment are more likely independent contractors than those paid a flat rate for delivery).

### 7. *Relation of work done to the employer's regular business*

A court is more likely to find a worker an employee if the work is part of the employer's regular business. *Restatement* § 220 comment h. The court of appeals addressed this factor in *Anton*, 141 Ariz. 566, 688 P.2d 192.[4] The contractor in that case, Perkins, entered into an agreement to harvest certain trees and deliver the lumber to Southwest. Southwest gave Perkins detailed specifications for the wood which Perkins passed on verbatim to his woodcutters. Perkins hired Anton as one of these woodcutters under a written contract. That contract required Anton to fell trees, cut them into logs, stack the logs into cords, and clean up the forest afterwards, all in accordance with the Southwest specifications. Perkins reserved to himself only the task of picking up and delivering the wood to Southwest. During the process,

---

**3.** *But see Fleming*, 71 Cal.App.3d at 687, 139 Cal.Rptr. at 582, concerning a two-week notice provision: "So long as the right of discharge cannot be invoked capriciously, as here where it can only be invoked if the newscarrier's services are 'unsatisfactory,' it is not '*conclusive* evidence negating independence of the person performing work for another.'" (Emphasis added.)

**4.** We recognize that the law of workers' compensation carries with it unique historical and statutory provisions which may not be completely applicable to the theory of vicarious liability. *See Anton*, 141 Ariz. at 569, 688 P.2d at 195. However, because the analysis and considerations of the employee-employer relationship are similar, we discuss these workers' compensation cases here.

Perkins checked Anton's work, making sure he cut the logs correctly, selected the correct quality of wood, stacked the timber as directed, cleaned the forest sufficiently, and worked quickly.

The court noted that in reality the wood-cutters conducted virtually every facet of Perkin's enterprise related to the Southwest contract. In deciding whether Anton was an employee for purposes of workers' compensation, the court considered whether the work performed was an *integral* part of the employer's *regular* business. *Id.* at 572, 688 P.2d at 198. It found Anton was an employee because Perkins had not limited his attempt to contract to a particularly "well-defined incidental activity ... ancillary to the central concerns of his business ... but rather the ongoing basic employment activity" itself. *Id.* at 573, 688 P.2d at 199. *See also Central Management,* 162 Ariz. at 190–91, 781 P.2d at 1377–78 (where "operating taxi cabs was the usual and regular course of CMC's business ... the claimant's work was not only an integral part of that business—it was the essential core of CMC's business.").

■ We find the *Anton* and *Central Management* analyses particularly apt here. Home delivery is critical to the survival of a local daily paper; it may be its essential core. As one court explained:

> The delivery of newspapers within a reasonable time after publication is essential to the success of the newspaper business. For the greater portion of its income the paper depends on advertising, and the rates for advertising are governed by the paper's circulation. Circulation is a necessity for success. The delivery boys are just as much an integral part of the newspaper industry as are the typesetters and pressmen or the editorial staff.

*Cooper v. Asheville Citizen–Times Publishing Co.,* 258 N.C. 578, 588, 129 S.E.2d 107, 114 (1963) (quoting *Laurel Daily Leader, Inc v. James,* 224 Miss. 654, 662, 80 So.2d 770, 772 (1955)). PNI is hard-pressed to detach the business of delivering news from that of reporting and printing it, especially when it retains an individual relationship with each carrier. *Compare Tanner,* 179 Ga.App. 722, 347 S.E.2d 690.

### 8. *Belief of the parties*

■ As stated above, Frausto believed that he was an employee, despite contract language to the contrary. Even if he believed he was an independent contractor, that would not preclude a finding of vicarious liability. As the *Restatement* explains: It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission of control by the other." *Restatement* § 220 comment m. *See also Singer v. Star,* 510 So.2d 637, 640 (Fla.Dist.Ct.App. 1987).[5] In addition to the parties' belief, the finder of fact should look to the community's belief. "Community custom in thinking that a kind of service is rendered by servants ... is of importance." *Restatement* § 220 comment h. The fact that the community regards those doing such work as servants indicates the relation of master and servant. The newspaper's customers did not have individual contact or contracts with Frausto. All payments, complaints, and changes were made directly to PNI. From these facts, a jury could infer that the community regarded Frausto as PNI's employee.

■ Again, analyzing these factors in relation to the facts of this case a jury could determine that an employer-employee relationship existed between PNI and Frausto.[6]

---

**5.** PNI argues that Frausto is "estopped" from asserting or without foundation to assert his understanding of the relationship. This argument is without merit. In determining the relationship between the parties, the court is to take into account all of the evidence. *See Ringling*

*Bros. v. Superior Court,* 140 Ariz. 38, 43, 680 P.2d 174, 179 (Ct.App.1983).

**6.** We also note Rev.Rul. 87.41, in which the Internal Revenue Service has presented a list of twenty factors designed as guides for determining whether an individual is an employee. These factors are:

## CONCLUSION AND DISPOSITION

Whether an employer-employee relationship exists may not be determined as a matter of law in either side's favor, because reasonable minds may disagree on the nature of the employment relationship. A jury could infer from these facts that Frausto was an employee because PNI involved itself with the details of delivery, received directly all customer complaints and changes so as to remove much of Frausto's independence, retained broad discretion to terminate, and relied heavily on Frausto's services for the survival of its business. The jury could also infer that Frausto was an independent contractor because he used his own car, was subject to little supervision, provided some of his own supplies, and could have someone else deliver for him within limits. Therefore, the trial court erred in finding as a matter of law that Frausto was an independent contractor. Summary judgment on the vicarious liability claim was inappropriate. The opinion of the court of appeals is vacated and the case is remanded to the superior court for proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., MOELLER, J., and THOMAS C. KLEINSCHMIDT, Judge, Court of Appeals, concur.

CORCORAN and CAMERON, JJ., recused themselves and did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, SARAH D. GRANT, Chief Judge, and THOMAS C. KLEINSCHMIDT, Judge, of the Court of Appeals, Division One, were designated to sit in their stead.

1. *Instructions.* A worker who must comply with another's instructions about when, where, and how to work is ordinarily an employee.

2. *Training.* If the worker is required to receive training to learn how to do the work an employment relationship is likely.

3. *Integration.* The more the worker is integrated into the business operations, the more likely he is an employee.

4. *Services rendered personally.* This tends to indicate an employment relationship when required.

5. *Hiring, supervising and paying assistants.* If the worker is responsible for his assistants, this is indicative of independent contractor status.

6. *Continuing relationship.* A continuing or recurring nature of work suggests employment.

7. *Set hours of work.* If hours are established by the business, this tends to indicate employment.

8. *Full time required.* An independent contractor has more freedom as to when and for whom he will work.

9. *Doing work on business premises.* If this is required, it suggests control by the employer.

10. *Order of sequence set.* The more this is controlled for, instead of by, the worker, the more employment is suggested.

11. *Reporting.* The more the worker must report, the greater the control of those supervising him, indicating employment.

12. *Payment by time, not job.* Independent contractors are more often paid by the job.

13. *Payment of traveling expenses.* An employer generally retains the right to regulate the employee's business activities.

14. *Furnishing of tools.* Independent contractors more often furnish their own tools and materials.

15. *Investment.* Independent contractors more often invest in facilities that are used in performing services.

16. *Realization of profit or loss.* A worker who can realize a profit or loss from his services is generally an independent contractor.

17. *Working for more than one firm at a time.* An independent contractor will often perform services for more than one business at a time.

18. *Making service available to public.* This indicates the status of an independent contractor.

19. *Right to discharge.* An independent contractor cannot be fired so long as he produces a result that meets contract specifications.

20. *Right to terminate.* If the worker can terminate services without liability, this indicates an employment relationship.
Rev.Rul. 87–41, 1987–23 I.R.B. 7.