ORVILLE (ORVAL L.) MOORE

*v.*

W. H. BURRISS

and

W. H. BURRISS

*v.*

ORVILLE (ORVAL L.) MOORE AND THE

CHARLESTON MAIL ASSOCIATION, A CORPORATION

(No. 10115)

Submitted April 19, 1949. Decided May 17, 1949.

758

*Wm. C. Battle, Bernard J. Pettigrew, Lon H. Barringer, Jr.,* for plaintiff in error.

*Mohler, Peters & Snyder, Charles Peters, James M. Ballengee, C. E. Copen, Spilman, Thomas & Battle, R. S. Spilman, Jr.,* for defendants in error.

FOX, JUDGE:

On June 28, 1947, at a point west of Winfield, in Putnam County, and on State Route No. 17, a collision occurred between two motor vehicles owned by Moore and Burriss,

respectively, one vehicle being a truck driven by Moore, and the other an automobile driven by Burriss. From this collision the drivers suffered personal injuries and both vehicles were damaged. At the time of the collision, which occurred sometime around 4:30 in the afternoon, Moore was engaged in delivering the Charleston Daily Mail to subscribers along his route, under an existing written contract, and Burriss, engaged in his own business, was returning from Charleston to his home, in Putnam County, about one and one-half miles west of the point of the collision. On October 1, 1947, Moore instituted his action against Burriss to recover damages, charging negligence on his part. This suit was instituted in the Circuit Court of Putnam County. On the day following Burriss instituted his action against Moore and the Charleston Mail Association, in the Circuit Court of Kanawha County, likewise claiming damages for alleged negligence on the part of Moore, and seeking to hold the Mail Association liable for Moore's negligence on the theory of his being its agent and servant. Under procedural rules respecting cross actions in tort promulgated by this Court on June 22, 1940, appearing on the first page of Volume 125 of the West Virginia Reports, the two actions were consolidated and ordered to be tried together in the Circuit Court of Putnam County. The two actions were so tried. In the first styled action of Moore against Burriss, the jury returned the following verdict: "We, the jury, find for the plaintiff, Orville L. Moore against the defendant, W. H. Burriss, and assess his damages at $250.00." In the action of Burriss against Moore and the Mail Association, the jury returned the following verdict: "We the jury find for the defendants." Burriss moved the court to set aside each of the said verdicts and to grant him a new trial for reasons which were assigned, and, his motion being overruled, excepted to the action of the court at the time. Judgment was entered on the said verdicts on March 12, 1948, and on November 15, 1948, at the instance of Burriss, we granted this writ of error.

The name of the plaintiff in the first case appears in the record as "Orville Moore", "Orval L. Moore" and "Orville L. Moore". The parties will be referred to herein as "Moore", "Burriss" and "Mail".

We will first take up the action of Moore against Burriss. Of course, to justify recovery by Moore, the burden of proof rests upon him to establish actionable negligence on the part of Burriss. Moore and Burriss are the two principal witnesses in the case, and Moore's case depends almost entirely upon his own statement of how the collision occurred. According to his testimony, just before the collision occurred, he had reached the end of his delivery route. He had traveled in a westerly direction, on the right hand or northern side of the highway, and had stopped at a mail box. He testified that he contemplated making a turn to the left on the highway and thereafter travel in an easterly direction along the south side of the highway. We think the evidence clearly shows that when Moore stopped at the mail box he was on the berm of the highway. The testimony shows that there was a ten foot berm on each side of the paved portion of the highway, and that such paved portion was about twenty feet and eight inches in width. Moore in his testimony, says: "Well, I delivered the papers and I looked through my mirror. I had a mirror on the outside of my car and one on the inside. Because in some cases I pulled from the road on to the berm, and the truck sits at such an angle that my outside mirror doesn't show the road, and my inside mirror does. In this case I looked at my outside mirror and did not see anything coming, and started in low gear and pulled on the road like this, and turned down. Because I pull down to here and make a circle like this, and back on the road, without having to back." He then goes on to state that he traveled along the highway, whether entirely on the berm or partly on the paved highway is not clear, for a distance of about thirty feet, and then turned towards the center of the paved highway for the purpose of making the turn referred to in the quoted portion of his testimony. He testifies that after traveling this distance of some thirty feet, and before

turning towards the center of the paved highway he did not give any sign by an extension of his arm, or otherwise, indicating his intention to turn, nor did he look to see whether any other vehicle was approaching. He then drove his car onto the paved highway, and at the time of the collision his car was in a diagonal position thereon, the front being across the center line thereof, and the rear wheels being some eighteen inches from the northern edge of the paved highway. Moore's truck was struck on the left rear wheel about the center of the wheel which was on the right side of the highway considering the direction in which the Burriss automobile was traveling.

Moore testifies that after the collision, he remembered nothing, and his statement is corroborated by other witnesses who appeared on the scene shortly after the collision. Testimony as to statements made by Moore immediately after the collision are not, we think, entitled to much consideration. It is quite evident that Moore, after the collision, was dazed and confused, and his remarks while he was in that condition should be given little if any weight, because irresponsible.

Burriss, testifying as to how the collision occurred, says that he was driving westerly along the right or north side of the highway in the direction of his home; that from the point of the collision in an easterly direction there was a plain view of some twelve hundred feet, and for some five hundred feet the highway was perfectly straight; that he was traveling at a speed of from forty to forty-five miles per hour and he thinks about forty-two miles; that when he was about five hundred feet from the point of collision he saw Moore's truck on the berm to the right of the paved highway; that he saw no indication of the truck being moved until he reached a point about one hundred feet from the truck, when the red light on its rear flashed; that he instantly applied all of his brakes and blew his horn; that he was unable to stop his automobile in time to prevent a collision. He also says that there was not room for him to pass either to the right or to the left of the truck in its

then position in time to avoid the collision. He further testifies that after he had applied his brakes his automobile skidded on the highway for a distance of about sixty feet, and this statement is corroborated by other witnesses who examined the highway immediately after the collision. The result of the collision was to seriously damage both Moore's truck and Burriss' automobile, and severe personal injuries were sustained by both parties. The truck was thrown to the left side of the highway and off the paved portion thereof, and the Burriss automobile landed off the highway to the right, and in the first row of a potato patch bordering thereon, a distance of approximately one hundred feet west of the point of collision.

Just before the collision, Burriss' automobile passed a truck being driven by one Carr and a man by the name of Clark was riding therein. Carr's testimony is that Burriss' automobile passed his truck about five hundred feet east of the point of collision, and that Burriss was traveling at a speed of about forty-five miles per hour. He also testified that he heard the blowing of a horn and the screeching of brakes from Burriss' car shortly after it passed him, and that he saw the accident. Clark, who was in the truck and asleep, was awakened by Carr and also saw the accident but made no statement as to the speed of the car. On cross-examination, Carr was asked if he had not made a statement, outside the presence of Burriss, and immediately after the collision, that when Burriss had passed him he was traveling at a speed of from seventy to eighty miles per hour. Objection was made to this inquiry on the theory that if foundation was being attempted to be laid for contradiction of the witness, the jury should be instructed that the statement inquired about, if made, could not be considered by them as evidence against Burriss but only as bearing on the credibility of the witness. At that time the court said: "Well the jury, of course, will not take any statement that he may have made as being evidence against Mr. Burriss, but it is permitted to go to the jury for the purpose of going to the credibility of this witness. And you will give it only that consideration." Carr denied hav-

ing made any such statement. Later one William Thevenin was introduced as a witness on behalf of Moore and when asked what, if anything, he had heard Carr say with reference to the speed of the Burriss automobile stated: "Well, all I heard him say, he was making between 75 and 80 miles an hour when it passed him." Before the question was answered, counsel for Burriss stated that he wanted the jury to get the same admonition as that which had been given with reference to the witness, presumably meaning Carr, and after the question was answered counsel then made the following request: "We ask the court to instruct the jury that that is not evidence against Mr. Burriss, it only goes to the credibility of the witness alleged to have made the statement." This motion was overruled. Counsel then said: "Your honor, that is hearsay evidence." To which the court replied: "I understand. If the jury finds he did make such statement, then it is the province of the jury to determine which statement that witness made, if he made two contradictory statements, which is correct, if either, as to the speed." Counsel then said: "That is exactly what I am saying. It only goes to the credibility of the witness. It is not evidence against Burriss." To which the court replied: "All right. You can argue that to the jury." To which ruling of the court an exception was noted at the time. The effect of this colloquy was to leave the statement of the witness in the record without any direction by the court limiting its consideration to the same extent the court had indicated such a statement should be limited when counsel for Moore made inquiries relating to statements supposed to have been made by Carr.

Another factual situation developed in the record was the relationship which existed between Moore and the Charleston Mail Association in respect to the question of agency. Of course, the claim against the Mail Association must rest, (1) on actionable negligence on the part of Moore; and (2) that the liability of Moore, if established, could be extended to the Mail by reason of the alleged fact that Moore was its agent and servant and that it was responsible for his negligent actions while engaged in its

business for which he had been employed. The written agreement of employment between Moore and the Mail, dated May 24, 1944, was introduced in evidence. By paragraph 1 of this agreement, Moore, who was designated as "contractor", agreed to transport and deliver both on weekdays and Sundays the Charleston Daily Mail to all persons, firms and corporations purchasing said newspaper along the route described as running from St. Albans to Winfield and Hurricane, West Virginia. The second paragraph of the contract provided that the contractor would purchase at wholesale rates copies of the Charleston Daily Mail, but that the means and methods of sale and delivery should be under the exclusive control of the contractor, the publisher looking only to the contractor for results. In paragraph 3, contractor agrees that he will work diligently to promote and circulate the Mail along said route, and not sell, deliver or promote the sale or delivery of any other newspaper without the written consent of the publisher. The contract then provides: "The means and methods of promoting the sale shall be under the exclusive control of the contractor, and publisher shall have the right to require diligent efforts to extend circulation and shall have the right to terminate this contract if satisfactory results are not obtained, it being understood, however, that results only are required of contractor." These are the only references to control appearing in the contract. There is no testimony in the case which can be said to be in conflict with or which show any construction or interpretation of the said contract different than that which its plain terms import.

At the end of the testimony offered by Burriss, counsel for the Mail moved the court to direct a verdict in its favor, which motion the court overruled. We think the motion should have been sustained. Where the facts are not in dispute, the question of an agency arising from employment whether evidenced by written contract or otherwise, should be determined by the court as a matter of law, and not submitted to a jury. *Kirkhart v. United Fuel Gas Co.*, 86 W. Va. 79, 102 S. E. 806, *Bank of White Sulphur Springs*

*v. Lynch,* 93 W. Va. 382, 116 S. E. 685. The test of whether an individual is an agent and servant of an employer, or an independent contractor, depends to a very great degree upon the control which the employer may exercise over the activities of the person who is employed to do a particular work. This theory is clearly upheld by our cases on the subject, among which are *Kirkhart v. United Fuel Gas Co.,* supra; *Waldron v. Garland Pocahontas Gas Co.,* 89 W. Va. 426, 109 S. E. 729; *Greaser v. Appaline Oil Co.,* 109 W. Va. 396, 155 S. E. 170; *Gunnoe v. West Virginia Poultry Co-Operative Association,* 115 W. Va. 87, 174 S. E. 691; *Meyn v. Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558. We think it clear that the Mail did not exercise any control over what may be termed the mechanics of making the deliveries which Moore had undertaken to do. By the very terms of the contract, the means and methods of promoting such sales were under the exclusive control of Moore. The fact that the Mail paid an agreed compensation of $22.00 per week as motor expense, later raised to $30.00 per week, could have no legal effect upon the point at issue; nor did the fact that, as incident to his delivery work, the contractor may have attempted to promote the circulation of the Mail, or distribute advertising matter in its and his own interest, change, in our opinion, the status of the parties which was that of employer and independent contractor. This particular question, as applied to contracts between publishing companies and those who deliver their publications, has not been heretofore presented to this Court; but it has been presented to courts of other jurisdictions. The cases of *Schickling v. Post Publishing Co.,* (Ohio), 155 N. E. 143; *Carter Publications, Inc. v. Davis,* (Texas), 68 S. W. (2d) 640; *Skidmore v. Troy Haggard and the Kansas City Star Co.,* (Mo.) 110 S. W. (2d) 726; *Gall v. Detroit Journal Co.,* (Mich.), 158 N. W. 36; *Turner v. The Item Co.,* (La.), 6 La. App. 270; *Joslin v. Idaho Times Publishing Co.,* (Idaho), 53 P. (2d) 323; and *Tyler v. MacFadden Newspapers Corp.,* (Pa.) 163 Atl. 79, cited by counsel for the Mail, appear to sustain the theory that in the case at bar Moore was an independent contractor,

and the Mail not liable for his negligent conduct, if any, committed while carrying out his agreement of employment. We do not think the case of *Hann v. Times Dispatch Pub. Co., Inc., et al.,* 166 Va. 102, 184 S. E. 183, a case involving the right of a delivery boy claiming to be entitled to benefits under the Workman's Compensation Act, can be considered as a departure from the general rule which, we think, should be applied in this case.

Taking up the case of Moore against Burriss, and considering all of the evidence introduced on the trial, we think there is no clear showing of actionable negligence on the part of Burriss. The evidence is that he was traveling on the proper side of the highway, and we do not think it shows that he was traveling at an unlawful rate of speed. To the contrary, his own testimony, and that of the witness Carr, is that he was traveling at a speed of not in excess of forty-five miles per hour when within five hundred feet of the collision, and there is nothing whatever in the record to indicate that he increased his speed west of that point. It is admitted that some five hundred feet east of the point of collision he saw Moore's truck on the berm of the highway. In the absence of any indication by the driver of the Moore truck that it would be moved from that position, we think Burriss had the right to assume that it would remain there, and if he was traveling at a lawful rate of speed he had a right to continue that speed. However, when he was at a point about one hundred feet east of where Moore's truck was placed and the red light on Moore's truck was flashed, indicating some proposed movement of the truck, it then became his duty to govern himself accordingly, and to attempt to bring his car under such control as was necessary to avoid an accident. He says he did this by applying his brakes, and as a warning to Moore sounded his horn. He is corroborated in this statement by Carr, who says he heard the horn blow, and the screeching of the brakes. That the brakes were effectively applied, is clear from the physical fact testified to by the skid marks on the highway extending for at least sixty feet. There has been no denial of these statements. Aside from the inferences

which may be drawn from the position of the two vehicles after the collision, the only doubt thrown on the correctness of the testimony of Burriss and Carr as to the speed of the Burriss automobile is that one witness testified that when the Burriss automobile was a quarter of a mile east of the point of collision it was traveling at a pretty good speed, and the statement of the witness Thevenin that immediately after the collision he heard Carr state, out of the presence of Burriss, that when Burriss passed him he was traveling seventy-five to eighty miles per hour, this statement being denied by Carr. But, that was not evidence against Burriss. It would only be treated as such evidence if made in his presence without protest from him. The action of the court in refusing to limit this statement on the part of Thevenin was, in our opinion, reversible error. The court properly ruled on this point when the basis for the contradiction of Carr was sought to be established, and that ruling should have been carried through. The suggestion that the jury would not so soon forget the court's ruling when the question was first raised is not convincing. The jury presumably followed the court's last ruling, and by that ruling the testimony of Thevenin was allowed to be put in the case without limitation as to the consideration to be given same.

But, even if the evidence in the case was such as justified the court in submitting the question of Burriss' alleged negligence to the jury, a question which, in view of the future course which this litigation may take, we do not decide, we are of the opinion that, on the record before us, Moore was guilty of contributory negligence as a matter of law. His truck was in a safe place to the right of the paved portion of the highway. The evidence of Moore himself, indicates that it was on the berm of the highway, and the testimony of Burriss, not denied, was that it was so located when he first saw it some five hundred feet away. At some time, when Burriss was evidently much closer to the truck, Moore decided to turn his truck on the highway without backing, and in doing so apparently flashed his red light, and did look into a mirror on the outside of his truck. He

says he saw nothing, but as there was a plain view of the highway for twelve hundred feet to the east, it is manifest that Moore did not look effectively, and this he was required to do. *Maynard v. C. & O. Railroad Co.*, 111 W. Va. 372, 162 S. E. 171; *Yoder v. Charleston Transit Co.*, 119 W. Va. 61, 192 S. E. 349; *Casto v. Charleston Transit Co.*, 120 W. Va. 676, 200 S. E. 841. Then, according to his own testimony, he traveled in low gear some thirty feet in a westerly direction before turning onto the paved highway. At that time it was his plain duty to take a further look, and to give some character of sign to advise approaching traffic of his intention to move onto the highway. This he failed to do, and, in total disregard of the consequences, moved his truck onto and over the paved highway across the center line of the same, obstructing passage of all traffic on the highway in whatever direction it was moving, unless the situation was such that there was an opportunity to move on the berm to the right or to the left. When Moore moved his truck onto the highway it created, according to the claim of Burriss, an emergency, the consequences of which, as he contends, he will not be held accountable, and which did not require of him action which in other circumstances should have been followed. Moore counters this proposition by contending that one cannot create an emergency by his own negligence, and then take advantage of same to excuse his own wrong doing, and there is authority for this contention. In *Elswick v. Charleston Transit Co.*, 128 W. Va. 241, 36 S. E. (2d) 419, this Court held: "The driver of a motor vehicle cannot invoke the doctrine of sudden emergency to relieve himself from liability to another whom he has injured as the result of his violation of a regulatory traffic statute." Many other cases might be cited to sustain this theory as applied to the case at bar. But this position assumes that Burriss was guilty of negligence, and, as indicated above, the record fails to show that Burriss was guilty of negligent conduct which might be said to create the emergency which arose when Moore drove his truck onto the highway. We think the negligence of Moore contributed proximately to his

own injury and the damage to his truck; and that in the circumstances of this case he is barred from recovery; and that the verdict and judgment in his favor cannot be upheld.

The doctrine of last clear chance is raised in this case by an instruction which the court gave at the instance of Moore. This doctrine can only be applied in cases where there has been primary negligence on the part of a defendant, contributory negligence on the part of a plaintiff, which taken alone would bar his recovery, and where after the negligent defendant has or should have observed the peril of the plaintiff, occasioned by his negligence, he fails to take reasonably necessary steps to avoid injury. We do not believe the doctrine of last clear chance has any place in this case. First, the evidence does not clearly show negligence on the part of Burriss; and if this be true then the negligence on the part of Moore was primary negligence and not contributory negligence, and it was his negligent act which caused the injury rather than any act of Burriss. This being true there is no place for the application of the last clear chance doctrine. But even if the evidence would justify submission to the jury of the question of the negligence of Burriss, and the contributory negligence of Moore, the last clear chance doctrine is never applied in cases where it can be clearly seen that no effort on the part of a negligent defendant could have prevented the collision. It is applied only in cases where, the other bases of the doctrine being established, a negligent defendant could by exercise of reasonable care avoid a collision and fails to do so. Here Burriss, in our opinion, did everything possible to avoid the injury after he observed that the collision was probable, and all his efforts failed. If he had failed in any step nececssary to avoid the collision, the case might be different.

What we have heretofore said makes it unnecessary to discuss at length the instructions given in the case. For the most part objections to instructions given on the part of Moore were directed to the point that they were based on

assumed facts not sustained by any evidence. It is always difficult to determine how much evidence is necessary to justify the giving of an instruction. We considered this question in a criminal case, *State v. Allen,* 131 W. Va. 667, 49 S. E. (2d) 847, and held that: "If there be evidence tending in some appreciable degree to support theory of proposed instructions, it is not error to give such instructions to jury, though evidence be slight, or even insufficient to support a verdict based entirely on such theory." And we cited a number of cases on that question. Clearly, instructions should not be given unless there is appreciable evidence in the case on the point covered by the instruction, but it is difficult to draw the line. According to our view of this case, the instructions given which assume negligence on the part of Burriss were improper, as was the instruction on the theory of the last clear chance; but, inasmuch as there must be a new trial in this case, we think it unnecessary to go into detail as to the instructions given because we do not treat their giving or their refusal as being the decisive question involved here.

The Mail Association moved the court to direct a verdict in its favor, and, as indicated above, the court should have sustained this motion at the time. The jury verdict having found for the Mail, and the court having entered judgment thereon, the same result has been accomplished. The judgment of the court on the Burriss claim as against the Mail should be, and is affirmed. On the other hand, the verdict and judgment in favor of the defendant Moore, in the action of Burriss against him, cannot be sustained by the law or the evidence, and should be, and are reversed and set aside. The verdict and judgment against Burriss in the action of Moore against Burriss are not sustained by the law or the evidence and said judgment is reversed and said verdict set aside. Under the ruling of this Court in *Koblegard Co. v. Maxwell,* 127 W. Va. 630, 34 S. E. (2d) 116, it becomes necessary that the two actions at law as between

Burriss and Moore be, and they are hereby, remanded to the Circuit Court of Putnam County for a new trial.

*Affirmed in part;*
*reversed in part;*
*new trial awarded.*