510 S.E.2d 286

**Marlin W. FITZWATER and Virginia Fitzwater, His Wife, Plaintiffs Below, Appellants,**

v.

**Jerry HARDING, d/b/a J & J Transportation, and Appalachian Log Structure, Inc., a West Virginia Corporation, Defendant Below, Appellees.**

No. 25059.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1998.

Decided Dec. 4, 1998.

Rudolph L. DiTrapano, Sean P. McGinley, DiTrapano, Barrett & DiPiero, Charleston, West Virginia, Attorneys for Appellants.

John M. Slack, III, Jackson & Kelly, Charleston, West Virginia, Attorney for Appellee Appalachian Log Structure, Inc.

PER CURIAM:

Marlin and Virginia Fitzwater, plaintiffs below/appellants (hereinafter referred to as "the Fitzwaters"), appeal a summary judgment ruling by the Circuit Court of Nicholas County. The circuit court dismissed the Fitzwaters' action against Appalachian Log Structure, Inc., defendant below/appellee (hereinafter referred to as "Appalachian"), after determining Appalachian had played no role in the personal injuries sustained by the Fitzwaters. This appeal followed. Based upon the record, and the pertinent authorities, we reverse the Circuit Court of Nicholas County.

## I.

### FACTUAL BACKGROUND

On November 16, 1994, Marlin Fitzwater was driving his car in Summersville, West Virginia. At an intersection, he was struck by a tractor trailer being driven by Bobby L. Shockley. Mr. Fitzwater sustained serious and life-threatening injuries from the accident. The tractor trailer driven by Mr. Shockley was owned by his employer Jerry Harding, d/b/a, J & J Transportation (hereinafter referred to as "J & J"). At the time of the accident, Mr. Shockley was returning from a delivery that he had made for Appalachian.

Mr. and Mrs. Fitzwater filed this action against Appalachian and J & J as a result of the accident.[1] A settlement was eventually reached between J & J and the Fitzwaters.[2] After extensive discovery, Appalachian moved for summary judgment. Appalachian

---

1. Mrs. Fitzwater filed a loss of consortium claim.

2. The record indicates the claim against J & J was settled for $750,000.

asserted that because it was neither the employer of Mr. Shockley nor the owner of J & J, it was not liable to the Fitzwaters. Opposing summary judgment, the Fitzwaters argued that genuine issues of material fact were in dispute as to whether J & J was an independent contractor and whether the overloading of J & J's trucks by Appalachian was a proximate cause of the accident. By order dated September 8, 1997, the circuit court granted summary judgment to Appalachian. This appeal followed.

## II.

## STANDARD OF REVIEW

We have held that "[a] circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). This Court has determined that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

## III.

## DISCUSSION

### Factual Issues Were In Dispute As To Whether J & J Transportation Was An Independent Contractor

The circuit court determined that no genuine issue of fact existed regarding the status of J & J as an independent contractor that hauled products manufactured by Appalachian. Before this Court, the Fitzwaters renew their argument that genuine issues of material fact are in dispute as to whether J & J was an independent contractor and whether the overloading of J & J's trucks by Appalachian was a proximate cause of the accident. Appalachian responds that there are no genuine issues of material fact. We held, in syllabus point 5 of *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990), that:

[t]here are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of respondeat superior: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

*Accord* Syl. pt. 5, *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994). We will examine the evidence in this case under the *Paxton* test.

**Selection and engagement of the servant.** Appalachian engaged J & J in 1990 to haul its wood products. While we find it inconceivable that in today's sophisticated economy, two purportedly independent companies would form a business relationship and fail to place into writing their working arrangement, *no written contract exists which memorializes the business relationship between J & J and Appalachian.* However, evidence in the record before the circuit court also revealed that Appalachian may have chosen the actual routes that J & J truck drivers were required to use. During the summary judgment proceeding, however, Appalachian contested this evidence and contended that the J & J drivers did not have to follow prescribed routes. Thus, it is evident that this issue concerning truck routes is in dispute and is material, particularly in light of the absence of a written contract of the business relationship between the two companies. Thus, there exists a genuine issue of material fact relating to the selection and engagement of the servant.

**Payment of compensation.** Appalachian paid J & J by the mile for the distance the truck drivers traveled while carrying Appalachian products. The Fitzwaters presented evidence showing the compensation provided

to J & J was lower than the tariff for haulage required by the West Virginia Public Service Commission. In response to this evidence, Appalachian disputed this evidence contending the mileage payment was competitive with the local market. On the issue of compensation, the Fitzwaters also produced evidence showing that Appalachian actually kept twenty-five cents for every mile J & J traveled with Appalachian's products. An expert employed by the Fitzwaters indicated that this was an unusual arrangement in the trucking industry and that such an arrangement was not consistent with the status of an independent trucking company. Clearly, there is a dispute over the issue of whether Appalachian paid compensation to J & J such that Appalachian may be considered J & J's employer. Hence, the conflicting evidence yields a genuine issue of material fact concerning the payment of compensation.

**Power of dismissal.** Before the circuit court, Appalachian contended that all truck drivers were hired and fired by J & J. The Fitzwaters, however, produced evidence of an incident wherein Appalachian was unsatisfied with the appearance of a J & J driver. Based upon Appalachian's complaints, adverse action was taken by J & J against this driver. We believe such evidence demonstrates a genuine issue of material fact regarding Appalachian's ability to dismiss J & J drivers.

**Power of control.** Appalachian also maintained below that it did not control J & J. However, the Fitzwaters produced contradictory evidence showing that Appalachian instructed J & J truck drivers how to interact with Appalachian customers. Furthermore, there was evidence establishing that J & J maintained its trucks on Appalachian's lot, and that Appalachian, itself, loaded its freight onto the trucks and used its own dunnage materials. There was additional evidence that a posting board was used in Appalachian's office for truck drivers to receive hauling instructions, and that payments received by Appalachian from its customers were collected by the truck drivers. According to the Fitzwaters' expert, all of these facts are inconsistent with an independent trucking company. We believe those facts preclude summary judgment in that a genuine issue of material fact exists as to Appalachian's power of control over J & J.

## IV.

### CONCLUSION

In view of the foregoing, we reverse the circuit court's ruling granting summary judgment to Appalachian.

Reversed.