585 S.E.2d 19

**Melissa Faith ZIRKLE, Individually and as parent of Rickie Daniel Hathaway, an infant, Plaintiff Below, Appellant,**

v.

**Robert Dale WINKLER and Clarksburg Publishing Company Morning Paper, Appellee.**

No. 30787.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided May 22, 2003.

LaVerne Sweeney, Esq., Grafton, West Virginia, Attorney for Appellant.

Boyd L. Warner, Esq., Waters, Warner & Harris, Clarksburg, West Virginia, Attorney for Appellee Clarksburg Publishing Company Morning Paper.

**PER CURIAM:**

In this appeal from the Circuit Court of Harrison County, the circuit court held that a newspaper company could not have any liability to pay compensation for injuries caused by a newspaper delivery driver, because the driver was an "independent contractor." We reverse and hold that the issue of the newspaper's possible liability is a jury matter.

### I.

#### Facts & Background

This case arises from a February 9, 1999 automobile accident in which a motor vehicle that was being driven by Melissa Zirkle, who is the appellant in this Court and the plaintiff below, collided with a motor vehicle that was being driven by Robert Winkler.

At the time of the accident, Mr. Winkler was delivering *Clarksburg Exponent* newspapers—which are published by the Clarksburg Publishing Company, the appellee in this Court and defendant below—to persons who subscribe to that newspaper. Mr. Winkler apparently delivered approximately 200 newspapers each day on what the company calls a "motor route" carrier delivery route, and for performing this work Mr. Winkler made about $850.00 a month. (*See* note 8 *infra* regarding further details of his compensation.)

On January 17, 2001, Ms. Zirkle (individually and on behalf of her child, who was a passenger in the car she was driving) filed a lawsuit against Mr. Winkler in Harrison County, seeking compensation for medical bills and personal injuries that she and her child allegedly suffered in the accident; she claimed that Mr. Winkler's negligence caused the accident. She also sued the appellee Clarksburg Publishing, asserting that the appellee was liable for the results of Mr. Winkler's alleged negligence under the doctrine of *respondeat superior*.[1]

---

1. Ms. Zirkle's complaint did not set forth a separate cause of action claiming negligence by the appellee in its selection, management, supervision, or retention of Mr. Winkler; we therefore do not address these theories of liability,

Clarksburg Publishing made a motion for summary judgment, asserting that the company as a matter of law could have no liability for the results of Mr. Winkler's alleged negligence—because, the appellee claimed, Mr. Winkler was, at the time of the accident, an "independent contractor." After a period of discovery, on November 14, 2001, the trial court granted Clarksburg Publishing's motion for summary judgment. From this order by the circuit court, Ms. Zirkle appeals. We discuss the other pertinent facts *infra.*

## II.

### Standard of Review

■ This appeal arises from the circuit court's granting of summary judgment, and our review is *de novo.* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety*

although some of the arguments in the briefs raise them tangentially.

**2.** It should be noted that the terms "master and servant," "principal and agent," and "employer and employee" are used somewhat interchangeably in cases involving *respondeat superior* liability—and that *respondeat superior* liability itself is sometimes referred to as "imputed" or "vicarious" liability. In *Fisher v. Townsends,* 695 A.2d 53, 58–59 (Del.1997), the court explained that:

> Because all employers are masters and all employees are servants, the terms employer/employee are often used interchangeably to denote a master/servant relationship. The appellations employer and employee, however, are used most frequently in determining workers' compensation rights or obligations. Accordingly the words employer and employee have become imbued with the connotations that arise from the implications of that direct relationship pursuant to the workers' compensation statute. Consequently, in situations like the case *sub judice,* when the issue is vicarious liability to a third party, use of the terms master and servant eliminates any unnecessary confusion.

In *Thomson v. McGinnis,* 195 W.Va. 465, 469, 465 S.E.2d 922, 927 (1995) (finding that a jury question was presented as whether a princi-

*Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion;" that party, in the instant case, is the appellant. *Painter v. Peavy,* 192 W.Va. at 192, 451 S.E.2d at 758.

## III.

### Discussion

■ The doctrine of *respondeat superior* has a longstanding basis in Anglo–American law. Syllabus Points 3 and 4 (in part) of *O'Dell v. Universal Credit Co.,* 118 W.Va. 678, 191 S.E. 568 (1937) state the doctrine as follows:

> The legal relationship of master and servant [2] is commonly understood to arise when one person subordinately serves another, both consenting thereto.... The master is answerable to a stranger for the negligent act of a person employed by the [master or] master's authorized agent, if the act is within the scope of the person's employment.[3]

pal/agent relationship was established), Justice Workman pointed out the technical distinction that may be made between the principal/agent relationship and the master/servant or employer/employee relationships, quoting Syllabus Point 2 of *Teter v. Old Colony Co.,* 190 W.Va. 711, 441 S.E.2d 728 (1994):

> "An agent in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons; while a servant or employee is one engaged, not in creating contractual obligations, but in rendering service, chiefly with reference to things but sometimes with reference to persons when no contractual obligation is to result." [Citation omitted.]

In the instant case, there was evidence tending to show both a technical principal/agent relationship between the appellee and Mr. Winkler—Mr. Winkler could, for example, apparently enroll new subscribers for the appellee—and a master/servant relationship, because Mr. Winkler's primary responsibility was to deliver newspapers to the appellee's individual subscribers.

**3.** The appellee does not dispute the fact that Mr. Winkler was acting within the scope of his employment when the accident occurred. *See generally, Brooks v. City of Weirton,* 202 W.Va. 246, 257, 503 S.E.2d 814, 824 (1998).

In *Cochran v. Michaels,* 110 W.Va. 127, 157 S.E. 173 (1931), Justice Hatcher undertook a scholarly review of the origin and purpose of the *respondeat superior* doctrine. He concluded that because the "rule combines in its support both principles of natural justice and public policy, we are of the opinion that it should be liberally applied in favor of those who invoke it." 110 W.Va. at 131, 157 S.E. at 174. We see no reason to stray from this well-reasoned conclusion.

■ Of similarly longstanding lineage is the "independent contractor" exception to the doctrine of *respondeat superior.* The parameters of that exception were stated in the Syllabus of *Walton v. Cherokee Colliery Co.,* 70 W.Va. 48, 73 S.E. 63 (1911) as follows:

Generally, if one let work, lawful within itself, to a contractor and retain no control over the manner of its performance, he is not liable on account of negligence of the contractor or his servants. But, if the work is intrinsically dangerous, or is of such character that injury to third persons, or to their property, might be reasonably expected to result directly from its performance, if reasonable care should be omitted, the employer is not relieved from liability by delegating the performance of the work to an independent contractor.

In *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 627, 225 S.E.2d 218, 222 (1976), this Court stated the respective burdens of proof regarding *respondeat superior* liability and the independent contractor exception:

It is always incumbent upon one who asserts vicarious [*respondeat superior* ] liability to make a prima facie showing of the existence of the relation of master and servant or principal and agent or employer and employee. However, once a prima facie showing has been made, it is incumbent upon one who would defeat liability on the basis of an independent contractor relationship to show such fact.

We also stated in *Sanders* that:

[t]he defense of "independent contractor" is one which defendants have long favored as a means of denying liability for acts which are done by those whom they neither control nor have a right to control.

However, over the years, the defense has proved to be a slender reed and one which the courts have found difficult to apply.

\* \* \* \* \* \*

In the intervening years, the general rule has remained intact, but its efficacy as a defense has been so frequently questioned as to lead the Court of Appeals in *Summers v. Crown Construction Company,* 453 F.2d 998, 999 (4th Cir.1972), to state:

"So riddled is the rule insulating a general contractor from an independent contractor's negligence that one court has aptly noted: 'Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions." ' [Citation omitted.]

This Court, like other courts, has established its catalog of "exceptions" to the general rule. Many of these "exceptions" use different words to convey the same meaning. All, however, are merely calculated to narrow the scope of the independent contractor defense and prevent its abuse as a mere convenient device for the evasion of responsibility and liability. For example, this Court has stated that the rule does not apply to relieve one who has employed an independent contractor from liability for the breach of a duty imposed upon him by law in behalf of the safety of the public, or for the breach of a nonassignable duty, or for the breach of an inescapable duty owed the public. [Internal citations omitted.]

Similarly, the rule does not apply to relieve one who has employed an independent contractor from liability for an injury if the injury might have been anticipated as a direct or probable consequence of the performance of the work if reasonable care is omitted; or if the work is intrinsically dangerous in character; or if a public authority has granted a right to engage in dangerous activities which right is denied the general public. [Internal citations omitted.]

Other cases reject the independent contractor defense by reason of the law's imposition of a continuing duty to exercise reasonable care or to put a stop to any

unnecessary or dangerous practices. [Citations omitted.]

159 W.Va. at 625–627, 225 S.E.2d at 221–222 (1976).[4]

In the instant case, on February 4, 1999, Mr. Winkler signed a two-page standard form document, prepared by the appellee, that described Mr. Winkler's duties, set his method of compensation, and stated that Mr. Winkler "is and shall be an Independent Contractor." [5]

■ This Court has recognized that the mere fact that work is being done "pursuant to a contract" establishes the independent contractor exception to *respondeat superior,*

and that language or terms that may be used to label a business or working relationship—whether in writing or otherwise—are not determinative on the issue of whether an "independent contractor" exception is established for the purpose of relieving an employing party from potential *respondeat superior* liability. As we stated in *Kirkhart v. United Fuel Gas Co.,* 86 W.Va. 79, 102 S.E. 806 (1920): "[p]roving that the work was being done under a contract does not constitute the defense of independent contractor." [6]

In *C & H Taxi Co. v. Richardson,* 194 W.Va. 696, 461 S.E.2d 442 (1995), this Court considered a claim by a taxi company that

---

4. Other examples of the inapplicability of the independent contractor exception to *respondeat superior* in certain circumstances are set forth in Syllabus Points 5–7 of *Law v. Phillips,* 68 S.E.2d 452, 136 W.Va. 761 (1952):

5. Ordinarily an employer of a competent independent contractor to perform work not unlawful or intrinsically dangerous in character, who exercises no supervision or control over the work contracted for, is not liable for the negligence of such independent contractor or his servants in the performance of the work; but if such work is intrinsically dangerous in character or is likely to cause injury to another person if proper care should not be taken, such employer can not escape liability for the negligent performance of such work by delegating it to such independent contractor.

6. "The defense of independent contractor has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable though the negligence is that of an employee of the independent contractor.' Point 2, syllabus, *Trump v. Bluefield Waterworks & Improvement Co.,* 99 W.Va. 425 [129 S.E. 309 (1925).]"

7. Owners of land who employ a competent independent contractor to do work on their own land and who know, or should know, that such work is likely to cause injury to a building on the land of adjoining owners unless proper precautions to avoid such injury are taken by such independent contractor, are liable for the injury caused to such building by the negligent performance of the work by such independent contractor.

5. The record is silent as to when Mr. Winkler began work delivering newspapers; the signature date on the document is apparently just five days before the accident. We note that the form

document that Mr. Winkler signed has all the *indicia* of a "contract of adhesion." *See* Syllabus Point 2 of *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 567 S.E.2d 265 (2002):

[e]xculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable.

6. The principle is well-established in all jurisdictions that "[i]n determining a worker's status . . . the 'label by which parties to a relationship designate themselves is not controlling." ' *Fisher v. Townsends,* 695 A.2d 53, 60 (Del.1997) (holding that lower court erred in granting summary judgment for employer on *respondeat superior* liability claim.). *See also Harrell v. Diamond A. Entertainment,* 992 F.Supp. 1343, 1353 (M.D.Fla. 1997) (". . . putting on an 'independent contractor' label does not take the workers from the protection of the [Fair Labor Standards] act."); *Hartford Underwriters Insurance Co. v. State Dept. of Human Resources,* 272 Kan. 265, 275, 32 P.3d 1146, 1154 (2001) (". . . language in a contract that characterizes an individual as an independent contractor, rather than an employee, is not controlling[.]"); *Heath v. Perdue Farms, Inc.,* 87 F.Supp.2d 452, 456–457 (D.Md.2000) (". . . the label that the parties give to their relationship is not controlling."); *Mukhtar v. Castleton Service Corporation,* 920 F.Supp. 934, 938 (S.D.Ind. 1996) (". . . even though the parties may have labelled their relationship in one way, their labels do not control. . . ."); *Potter v. Hawaii Newspaper Agency,* 89 Hawai'i 411, 418, 974 P.2d 51, 58 (1999) (whether ". . . parties have 'agreed' not to label themselves as employer and employee" is not controlling).

the company did not have the responsibility for paying workers' compensation premiums for the benefit of the drivers who drove the company's taxicabs. The driver and company had executed a vehicle lease that clearly denominated the driver as an "independent contractor" and repudiated any master-servant relationship.

We held in *C & H* that the taxicab company exercised significant powers of control over the driver, including the right to terminate the relationship and to specify the day-to-day duties of the drivers; and we noted that the operation of the taxis was an integral part of the company's business. We held that the conclusion by the Workers' Compensation Fund that the drivers were not independent contractors was a reasonable one, "the disclaimers of the lease concerning the status of the drivers notwithstanding." 194 W.Va. at 703, 461 S.E.2d at 449.

As previously noted, once a master/servant *prima facie* case has been shown, the burden of establishing the independent contractor exception to *respondeat superior* lies on the party asserting the exception as a defense to liability. *Sanders, supra.* In the Syllabus of *Hicks v. Southern Ohio Quarries Co.*, 116

W.Va. 748, 182 S.E. 874 (1935), we stated the respective roles of the court and the jury in assessing whether the independent contractor exception to *respondeat superior* liability has been established:

In a case involving the relationship of independent contractor, although the facts may be undisputed, the issue should be submitted to the jury and not decided by the court as a matter of law, unless the facts are such as would justify but one reasonable inference.

We also stated in *Hicks*, 116 W.Va. at 754–755, 182 S.E. at 877:

Where the admitted facts are such that fair-minded [persons] might draw different inferences from them, the case is one for the jury rather than the court.

■ We re-stated this principle in Syllabus Point 1 of *Levine v. Peoples Broadcasting Corp.*, 149 W.Va. 256, 140 S.E.2d 438 (1965):

Where the evidence relative to whether a particular person is an independent contractor or an employee is in conflict or, if not in conflict, admits of more than one reasonable inference, an issue is presented for jury determination.[7]

7. Additionally, in *American Tel. & Tel. Co. v. Ohio Val. Sand Co.*, 131 W.Va. 736, 740, 50 S.E.2d 884, 886 (1948), we held that the issue of *respondeat superior* liability and the applicability of the independent contractor exception was to be determined by the jury, stating:

In this jurisdiction it is settled that in cases involving no controversy concerning the actual facts, if different inferences could be drawn therefrom, submission to a jury is nevertheless required.

*See also Fitzwater v. Harding*, 203 W.Va. 627, 510 S.E.2d 286 (1998) (jury question whether trucking company was independent contractor for *respondeat superior* purposes). In light of these cases, the Syllabus of *Bank of White Sulphur Springs v. Lynch*, 93 W.Va. 382, 116 S.E. 685 (1923) which is cited as Syllabus Point 1 of *Moore v. Burriss*, 132 W.Va. 757, 54 S.E.2d 23 (1949), a case that we discuss *infra*, should be read to include the following bracketed language: "Where the facts are undisputed [and only one reasonable inference can be drawn from the facts], the question of agency arising therefrom should be determined by the court, and not submitted to the jury."

The same principles that apply to determining whether the facts justify the inference that a servant is an independent contractor for whose

wrongful conduct the master is not potentially liable also apply to the inference of negligence—which is also ordinarily a matter for the jury, except when only one reasonable inference can be drawn from undisputed facts. For example, in *Carnahan v. Monroe*, 117 W.Va. 279, 283, 185 S.E. 234, 235 (1936), this Court disapproved of an instruction that required a jury to find contributory negligence if it found certain detailed facts. We stated:

This instruction is erroneous because it withdraws from the jury the right to determine whether the assumed facts exculpate plaintiff. The jury must be left to draw its own inferences from admitted or assumed facts except in cases where only one reasonable inference can be justified.

*See also* Syllabus Point 6, *Ketterman v. Dry Fork R. Co.*, 48 W.Va. 606, 37 S.E. 683 (1900) ("... whether the facts admitted or not denied are such that fair-minded men might draw different inferences from them, it is a case for the jury, and a case should not be withdrawn from the jury unless the inferences from the facts are so plain as to be a legal conclusion,—so plain that a verdict for the plaintiff would have to be set aside as one rendered through prejudice, passion, or caprice."); *Kidd v. Norfolk & Western Ry. Co.*, 156 W.Va. 296, 301, 192 S.E.2d 890, 893 (1972)

Turning more specifically to the issue involved in the instant case, this Court has spoken to the issue of independent contractor status for newspaper carriers—most recently in *Huntington Publishing Co. v. Caryl,* 180 W.Va. 486, 377 S.E.2d 479 (1988).

In *Huntington Publishing,* the issue before this Court was whether a taxable "retail sale" occurred between a newspaper and its subscribers within the meaning of a business and occupation tax, notwithstanding the newspaper's assertion that the carriers were "independent contractors" who bought their papers at wholesale and sold them at retail to subscribers.

Syllabus Point 2 of *Huntington Publishing* states:

> When route carriers for a newspaper publishing company are required to deliver their papers to all points on a route at a time designated by the publishing company; and, when district sales managers, who are employees of the publishing company, act as liaisons between the carriers and the subscribers by supervising the daily activities of the carriers and by responding to complaints from subscribers; and, when the publishing company receives payments for prepaid subscriptions, route carriers are agents of the publishing company for the purpose of making retail sales to customers, and such retail sales are taxable to the publishing company under our former Business and Occupation Tax, *W.Va.Code,* 11–13–1 *et seq.*

In *Huntington Publishing,* we stated that the newspaper company's "ability to release a carrier [without a stated reason] effectively controls the carrier's method of operation. The right to fire is one of the most effective methods of control. *Cooper v. Asheville Citizen–Times Publishing Co., Inc.,* 258 N.C. 578, 129 S.E.2d 107, at 115

(1963)." 180 W.Va. at 491, 377 S.E.2d at 483. In the instant case, the document prepared by the appellee stated that the appellee had the right to terminate Mr. Winkler as a carrier without cause.[8]

Although the issue in *Huntington Publishing* was not *respondeat superior, Cooper v. Asheville Citizen–Times Publishing Company,* which was approvingly cited in *Huntington Publishing* on the independent contractor issue, was a *respondeat superior case,* and is factually similar to the instant case. The North Carolina court in *Cooper* reversed a grant of summary judgment for a newspaper company, holding that the issue of the independent contractor exception to *respondeat superior* was for the jury.

In *Cooper,* the Court held that the *indicia* that would support a finding by a jury that a newspaper publisher was responsible under *respondeat superior* for an injury caused by a delivery route driver included the fact that the driver was performing

> … a part of the regular business of the employer … The delivery of newspapers within a reasonable time is essential to the success of the newspaper business.... The delivery boys are just as much an integral part of the newspaper industry as are the typesetters and pressmen of the editorial staff.

258 N.C. at 587–588, 129 S.E.2d at 114 (citations and internal quotations omitted).

Additionally, in *Cooper,* the driver did not have an independent business or occupation; when and how he was to perform his obligations was fixed in large measure by the terms of his "independent contractor" agreement; and the services he was required to render were "routine in nature, requiring diligence and responsibility, rather than discretion and skill." *Id.* These factors are all also present in the instant case.

("All of the surrounding circumstances must be considered and where the material facts are undisputed and only one inference may be drawn from them by reasonable minds, then and only then are the questions of negligence and contributory negligence questions of law for the court [citations omitted].").

8. The payment method for Mr. Winkler is set forth in the document in which he is called an

independent contractor, and is very similar to the method in *Huntington Publishing.* The carrier "purchases" newspapers from the appellee at a wholesale rate (on credit), and subscribers' payments to the appellee are credited to the carrier, with a system of advances, etc. Our decision in *Huntington Publishing* shows that this "wholesale/retail" payment method is not dispositive on the independent contractor issue.

In *Cooper*, the court held that "[o]rdinarily the day by day sale and delivery of newspapers under a cancellable agreement of indefinite duration may not be considered 'a specific job under contract' within the meaning of that phrase when used in defining an independent contractor." 258 N.C. at 589, 129 S.E.2d at 115. In the instant case, Mr. Winkler was delivering newspapers under "a cancellable agreement of indefinite duration," just as in the *Cooper* case.

A number of newspaper carrier/*respondeat superior* cases (representing reported decisions from approximately twenty-one states) are collected at the annotation, "Newspaper Boy or Other News Carrier as Independent Contractor or Employee for Purposes of Respondeat Superior," 55 A.L.R.3d 1216 (1974) (Cum.Supp.2002).

A review of the collected cases as described in the annotation indicates that approximately fifteen jurisdictions have held that a newspaper company can under at least some circumstances be held liable under *respondeat superior* for the negligence of a newspaper carrier; that approximately six jurisdictions have held to the contrary; and that the weight of authority is that the issue of *respondeat superior* liability by a newspaper for the negligence of a carrier is an issue ordinarily to be resolved by a jury.[9]

Another example of the view that the issue is ordinarily for the jury is found in *Hampton v. Macon News Printing*, 64 Ga.App. 150, 12 S.E.2d 425 (1940), where the court reversed a summary judgment for a newspaper company after a delivery carrier on a motorcycle caused a serious accident. *See also Jenkins v. Gadsden Times Publishing Corp.*, 521 So.2d 957 (Ala.1988) (summary judgment

on *respondeat superior* claim against publisher was inappropriate where route driver delivering newspaper injured plaintiff); *Brown v. Commercial Dispatch Publishing Co., Inc.*, 504 So.2d 245 (Ala.1987) (child severely injured while riding with newspaper route carrier; parties' characterization of relationship as "independent contractor" was not controlling; question was for jury whether newspaper was liable pursuant to *respondeat superior* ).[10]

In another case, *Legassie v. Bangor Publishing Co.*, 741 A.2d 442 (Me.1999), a pedestrian was allegedly injured by a car driven by a newspaper carrier. The Supreme Court of Maine reversed a summary judgment in favor of the newspaper company, distinguishing an earlier case, *Lewiston Daily Sun*, 407 A.2d 288 (Me.1979), where the carrier was an employee of an intermediate company and where the court had held that the independent contractor exception to *respondeat superior* did apply. *See also Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 513, 794 P.2d 138, 145 (1990), where the court stated that:

> Home delivery is critical to the survival of a local daily paper; it may be its essential core.... [The newspaper] is hard-pressed to detach the business of delivering news from that of reporting and printing it, especially when it retains an individual relationship with each carrier. [citations omitted]

The *Santiago* court held that "[w]hether an employer-employee relationship exists may not be determined as a matter of law in either side's favor, because reasonable minds may differ on the nature of the employment

---

**9.** The leading case in the annotation is *Sliter v. Cobb*, 388 Mich. 202, 200 N.W.2d 67 (1972). The court in *Sliter* held that it was a question for the jury as to whether the newspaper could avoid *respondeat superior* liability by asserting the independent contractor exception.

**10.** In a non-*respondeat superior* case, *Kentucky Unemployment Insurance Commission*, 91 S.W.3d 575, 581 (Ky.2002), the court held that newspaper carriers were properly classified as employees and not independent contractors for unemployment insurance purposes. The court quoted from the Unemployment Commission as follows:

> The evidence clearly shows that the workers were controlled by [Landmark] relative to where the newspapers were to be placed, when they were to be delivered, and in what condition, [Landmark] not only retained the right to control, but exercised that control, up to and including termination.
>
> The agreement/contract between Landmark and the workers was [Landmark's] agreement. If a worker did not sign the contract, he or she could not work for Landmark.... The statement that an individual worker is independent and understands that is not dispositive in a case such as this.

relationship." 164 Ariz. at 513, 794 P.2d at 146.[11]

The appellee argues that *Moore v. Burriss,* 132 W.Va. 757, 54 S.E.2d 23 (1949), in which this Court addressed the issue of whether a newspaper company could be liable for injuries resulting from the negligence of a newspaper carrier, conclusively supports the circuit court's grant of summary judgment in the instant case.

In *Moore v. Burriss,* this Court held that a newspaper company was not and could not be liable as a matter of law for an injury negligently inflicted by a newspaper carrier upon a third party. The Court in *Moore* took a very narrow view of the type and degree of involvement and control that the newspaper company had over its carrier, a view that is not in consonance with either the majority of jurisdictions or more recent decisions of this Court, *see Huntington Publishing, supra.* For this reason, we do not believe that *Moore v. Burriss* is controlling in the instant case.

The appellee also argues that our decision in *Shaffer v. Acme Limestone Company,* 206 W.Va. 333, 524 S.E.2d 688 (1999) supports the circuit court's decision in the instant case to grant summary judgment for the appellee.

In *Shaffer,* we held that a limestone quarry was potentially liable under *respondeat superior* for the results of allegedly negligent conduct by a trucking company that delivered stone to the quarry's customers—even though the trucking company was otherwise an independent contractor—because there was a question as to whether the quarry was illegally overloading the company's trucks. If the alleged illegal loading were proven, we held, the quarry would have been so implicated in wrongful conduct by the trucking company as to prevent the applicability of the independent contractor exception to *respondeat superior.*

The facts in the *Shaffer* case are quite different from the facts in the instant case. In *Shaffer,* a quarry contracted with a trucking company, whose employees operated that company's trucks, to haul stone to the quarry's customers. In the instant case, Mr. Winkler worked directly for the appellee, not for a delivery company that contracted with the appellee. Additionally, in *Shaffer* there was no evidence that the work of the trucking company included promoting the quarry's stone to potential new customers; or that the contract between the quarry and trucking company was terminable at will. These two factors are present in the instant case, with respect to Mr. Winkler's relationship with the appellee.

Additionally, in *Shaffer* there was no suggestion that the trucking company was unable to pay for injuries occasioned by negligence in the conduct of its trucking business. In the instant case, however, although the appellee's form contract required carriers like Mr. Winkler to have $200,000.00 in liability insurance (and a policy that named Clarksburg Publishing as an additional insured), Mr. Winkler apparently had only $20,000.00 in liability insurance. There is also evidence in the instant case tending to show that the appellee did not have a system for verifying that such insurance is kept in place; and evidence that the appellee did not check carriers' driving records, or take other safety-related precautions such as obtaining a medical history or vehicle safety inspection verification. It is stated as being undisputed that Mr. Winkler had a conviction for DUI in 1995, and one for driving on a suspended license in 1996.

Had the facts in *Shaffer* been that the *trucking company* (not the quarry) had tried to avoid accountability for the results of a truck driver's negligence by attempting to make all of its truck drivers "independent

---

**11.** An example of a case in which a court upheld summary judgment in favor of a newspaper publishing company, is *Lee v. Pulitzer Publishing Co.,* 81 S.W.3d 625 (Mo.App.2002). In *Lee,* several factors combined to persuade the court that the delivery route owner was so clearly an independent contractor that *respondeat superior* liability was not available against the newspaper as a matter of law. Those factors included the fact that the owner of the route had purchased it from another party for $60,000.00; that the route owner had a number of employees; that the route owner had the right to sell and assign the route to another; that the route agreement could only be terminated for cause; and that there was no evidence of control by the publishing company over how the delivery work was performed.

contractors," then the *Shaffer* case would have been more like the instant case, and the independent contractor issue would be clearly, at the least, a jury issue. We therefore do not believe that the holding in the *Shaffer* case supports the appellee's position.

## IV.

### *Conclusion*

In the instant case, the evidence before the court (seen in the light most favorable to the appellant, as it must be), tended to show that the appellee has recruited and manages a large number (apparently a fleet of more than one hundred carriers) of persons who drive the public roads each day, to deliver the appellee's newspapers to the appellee's subscribers. The appellee has not contracted with the U.S. Mail, FedEx, UPS, or some other independent delivery company to get its periodical to its subscribers; rather the appellee has undertaken to perform the delivery task itself. The appellee recruits, employs, and deploys this fleet to do a task in the performance of which it is reasonably foreseeable that "injury to third persons, or to their property, might be reasonably expected to result directly from its performance, if reasonable care should be omitted . . . ." Syllabus (in part), *Walton v. Cherokee Colliery Co., supra.*

In these circumstances, when an entity engaged in a commercial activity on its own initiative places a fleet of drivers and automobiles on the public roads to accomplish a part of its core business activity, it is at the least a reasonable inference that accountability and responsibility for the injurious results of negligence in the operation of those automobiles should be borne by the entity engaging in the commercial activity. This is but another way of stating, under modern conditions, the ancient rule of *respondeat superior*—a rule that Justice Hatcher said ". . . combines in its support both principles of natural justice and public policy . . .[.]" *Cochran v. Michaels, supra,* 110 W.Va. at 131, 157 S.E. 173 at 174.

12. Reasonable minds in more than a dozen appellate courts (*see* cases cited at Annotation, 55 ALR3d 1216, *supra,* have made or supported

Considering all of the circumstances in which the independent contractor exception to *respondeat superior* is being asserted in the instant case, it is evident that reasonable minds could infer that the appellee was not entitled to successfully assert the exception.[12] Therefore, the circuit court erred in determining as a matter of law that the appellee could not be held liable under the *respondeat superior* doctrine.

The circuit court's grant of summary judgment for the appellant is reversed. The applicability of the independent contractor exception to the claim of *respondeat superior* liability by the appellee is a matter for the jury, upon consideration of all of the facts and circumstances involved in the claim in which the exception is asserted.

Reversed and Remanded.

such an inference in a number of cases with similar facts).